## UNITED STATES v. McCORD et al.

### (District Court, W. D. Wisconsin. November 26, 1895.)

**1. CONSPIRACY UNDER FEDERAL STATUTES.**
   The statutes of the United States do not define what a conspiracy is, or create any new offense. They merely recognize the crime of conspiracy as known to the common law, and the courts must go to the common law to determine what it is. The statutes, however, impose one limitation upon the common-law crime, namely, that there must be some overt act.

**2. SAME—STATUTE OF LIMITATIONS.**
   A conspiracy to defraud the United States by making unlawful entries of public lands cannot, for the purpose of avoiding the statute of limitations, be split up into different conspiracies for each section of land entered or for each overt act done; nor can it be held that there is a new conspiracy by the parties to the original conspiracy, whenever a new party is brought into the scheme, so as to make the statute of limitations begin to run from that time.

This was an indictment against Warren E. McCord, Arthur R. Osborn, Harry J. Box, Robert C. Heydlauff, Gussie L. Andrews, and James B. Murray, charging that, on the 23d day of October, 1891, the said defendants unlawfully conspired together, and with divers other persons, to defraud the United States of its title and possession and dominion over certain unappropriated lands belonging to the United States, which are fully described in the indictment. There was also joined in this indictment a count for a conspiracy to commit perjury, but this count was nolled by the prosecution. The indictment was filed October 13, 1894. At the trial, after the evidence for the government was completed, the defendants moved the court to direct a verdict for the defendants, mainly upon the ground that the prosecution was barred by the three-years statute of limitations, prior to the filing of the indictment.

The proof introduced by the government showed that in December, 1890, or January, 1891, the defendant McCord had an interview with the witness Day, to the effect that the latter should obtain homestead settlers to go to the land office at Ashland, in April, 1891, when the lands were to be offered for homestead entry, and have them make applications for homestead entries, and that McCord would furnish the money to pay their expenses, cost of living, cost of necessary homestead improvements, and for land-office fees, and necessary fees in case of contest, and for these sums was to have security upon the land when obtained by the homesteader.

In the latter part of March, 1891, defendant McCord wrote a letter to Mr. Day, as follows:

"I am interested in the lands that are coming in at Ashland April 17th, and can get you a homestead in this way: You go there Tuesday, April 7th. and I will get you a place in the line, and then I will pay half of all the expenses, and you pay half, and let your family go and live on it, and when you prove up you have half the profits and I half. We will allow the family so much a month to live on while they are there, and charge so much to get the estimates,—about $25, I think,—then the expense of making out papers and your expenses while filing, and then divide in the end."

In the early part of April, 1891, the defendant Box went to the house of the witness Hobbs, and represented to Mrs. Hobbs that if her husband would take up a homestead when the lands should be offered at Ashland, in April 1891, McCord would pay the expenses, and would expect to have one-half

the land and timber in return for the payment of such expenses. Mr. Hobbs, however, did not make any homestead application. In April, 1891, Mr. Day went to Ashland, in pursuance of the understanding had with McCord, and procured homesteaders to get into line at the windows of the Ashland land office, for the purpose of making applications for homesteads. This was done expressly under the previous understanding with McCord, and these men so procured to stand in line were expected to come into the arrangement which McCord had made with Day. Before the time of entry arrived, the secretary of the interior suspended the sale, on the ground that violence and bloodshed were apprehended, and later the lands were again opened for settlement, on the 2d day of November, 1891. In the latter part of September or first part of October, 1891, Mr. Day arranged with the defendant James B. Murray to go to Iron River, Wis., in the vicinity of the lands in question, and make an entry upon land that would be pointed out to him by Day, and under which arrangement Murray was to be furnished with the entry fee, to be paid for his living expenses while on the land, for his improvements, and also for contest fees in case of a contest, and was then to give security to McCord upon the land so entered. Murray accordingly went to Iron River about the 23d of October, 1891, and thereafter made the homestead application mentioned in the first count of the indictment, which was forwarded to Ashland, and filed November 2, 1891. Murray made a settlement upon the land, and improvements, and a contest was had in May, 1892, in the land office, the expense of which was paid by the defendant McCord, and which was decided in favor of Murray. On May 18, 1892, the following written agreement was entered into between McCord and Murray:

"This agreement, made and entered into by and between James B. Murray, of Bayfield county, Wisconsin, party of the first part, and A. R. Osborn and W. E. McCord, parties of the second part, is as follows: The first party hereby agrees and binds himself to build a house and make such other improvements on as may be necessary, and move onto and maintain a residence on [here follows description of lands], and as soon as he receives a final receipt on the same to pay to the party of the second part the sum of two hundred and fifty dollars for the numbers, and ten per cent. interest on all moneys furnished him to live, etc., or to give second party security for same on above-described land. And the second party agree to furnish fifty dollars to build a house, five dollars per month to live on, and to pay the attorney fees and land-office fees in Ashland and Washington.
                                        "James B. Murray."

In 1893 the defendant Murray relinquished to the government his homestead rights under his settlement, and the land was entered under the stone and timber act by one Hoover. No testimony was given on the part of the defendants, but, at the close of the case made by the government, a motion was made on the part of the defendants to direct a verdict for the defendants, on the ground that the statute of limitations of three years had run upon the prosecution before the filing of the indictments.

H. E. Briggs, U. S. Atty., and James G. Flanders, for the United States.

Spooner, Sanborn, Kerr & Spooner, Chas. Felker, and Lamoreux, Gleason, Shea & Wright, for defendants.

BUNN, District Judge (charging jury). Had not the questions raised by the evidence in the case made by the prosecution been very thoroughly argued, and abundance of authority produced, the court would hesitate to decide finally upon them at this stage of the trial, but would submit the case to the jury, and reserve the questions for further and more elaborate consideration; but according to the view which the court takes of the case, it would be very doubtful whether the court would get any further light

if these questions were to be reserved for further consideration upon a motion for a new trial, in case a verdict should go against the defendants, or any of them. The case has been argued with much thoroughness and ability on both sides, and I do not know but the court is about as well prepared to dispose of the case now as it would be at any time in the future. The separate and distinct motions in favor of the defendants Heydlauff and Mrs. Andrews will be overruled, on the ground that, while the evidence is not so strong against them or either of them as against the other defendants, the court cannot say but what there is some evidence which ought to be submitted to the jury, if the case is to go to the jury at all. However, I may say this: that as far as the case of Mrs. Andrews is concerned, the evidence showing that she was a mere clerk or secretary of Mr. McCord in this whole transaction,—nothing to show that she had any interest in it herself, or was to share in the proceeds, or that she was originally a party to the conspiracy, except as acting there as clerk for the defendant McCord,—I should have considerable doubt about the evidence being sufficient to support a verdict against her, and if her case rested upon that proposition alone, I should wish to look a little further into the evidence, to see whether there was evidence which should go to the jury or not. I would want a little further light on the question how far a clerk, or person acting as a mere secretary, and perhaps knowing something about the unlawful intent, but having no interest in the conspiracy, and not being an original party to it,—how far she could act with guilty knowledge, if the transactions of her principal were unlawful, without connecting her with the case. But, as the court said, it will overrule the motion, so far as these two defendants are concerned,—the separate motion in favor of discharging them,—on the ground that they are not sufficiently connected with the conspiracy, because I think the case may be satisfactorily disposed of upon the other motion, which is to direct a verdict in favor of all the defendants, on the ground that the government has not made a case under the law. That is my deliberate judgment,—that the government has not made a case under the law.

It is incumbent upon the prosecution in a criminal case to show that a criminal act has been committed within the time limited by the statute of limitations,—that the statute of limitations has not run upon it. It is incumbent upon the government to show, —and the rule is different in criminal cases from what it is in civil cases, where the statute of limitations is held to be a defense, and must be pleaded,—it is incumbent upon the prosecution, as an affirmative proposition in a criminal case, to make a case that is satisfactory to the jury, on which the statute of limitations has not run. In a criminal case under the United States statutes it is incumbent on the prosecution to show that an offense has been committed within the three years immediately preceding the finding of the indictment or the commencement of the prosecution, by information or otherwise. Now, in the judgment of the court, that has not been done in this case. Even if you allow that what

is claimed here on the part of the government attorneys is true, —and I cannot concede it; I think they are all wrong on that,— I do not think this thing can be split up, and make a dozen or a hundred conspiracies out of one, so that for every overt act a separate indictment for conspiracy can be filed or maintained; that is not my idea of conspiracy at all. But allowing that to be so, —allowing that this evidence is all introduced as bearing (this evidence of the conspiracy in the spring of 1891),—allowing that that is all introduced, and intended to be introduced, on the part of the prosecution, simply as bearing on the question of the intent of these parties in reference to the entry of this land by Murray in the fall,—allowing that to be so, it seems to me that the case for the government is not brought within the requirement of the law. It is true that the witness in one place says that this was in October, 1891. The indictment was found on the 13th of October, 1894. It ought to appear affirmatively by the government, before it can ask a verdict at the hands of this jury, that Murray was brought into this matter after the 13th of October, 1891. Now, that does not appear from any of the evidence. Some of the evidence, on cross-examination, shows that it was in September. The witness says it was either in September or October, and in another place in October, he cannot tell what time; he thinks it was about the 20th. Now, that is not evidence that it was after the 13th of October. The best that can be said in favor of the government is that it has left it in extreme doubt as to whether the statute of limitations has not run upon this case; and that ought not to be so. The witnesses ought to have known —somebody ought to have been able to testify—that this conspiracy was formed and entered into, and an overt act committed, after the 13th of October, 1891. It is maintained on the part of the government attorneys that this evidence—the principal evidence in regard to the conspiracy, relating to the winter and the early spring of 1891—was introduced as simply bearing upon the question of the intent of these parties in forming a distinct conspiracy in the fall, about the time these lands came into market for homestead entry. Certainly the court did not understand that this evidence was introduced for any such purpose, and if it had been offered for that purpose, and objection had been made to it, it seems quite clear to the court that it must have been ruled out. You cannot prove one conspiracy in order to show that another has been committed. It is said that the evidence was admitted without objection. Suppose it was. I think the court must presume that it was admitted to prove (what it evidently tends to prove) that defendants formed a general conspiracy in the spring of 1891 to enter these lands, without regard to any particular description,—to enter these Omaha reserved lands, fraudulently, against and in violation of the statutes of the United States. If it does not show that,—if the government case does not show that,—I do not know what it does show. That is what the court has had in mind ever since this trial commenced,—that the evidence was directed to show that this conspiracy was formed

in the spring of 1891. Now, then, it is very doubtful in my mind, if you take the position that the counsel for the government takes, —that this was introduced merely for the purpose of bearing upon the question of intention,—whether there is sufficient evidence in the case to show a distinct conspiracy in regard to this particular quarter section of land that Murray made application to enter in the fall of 1891. I hardly think there is; but it is perfectly clear to my mind that the counsel are wrong in their propositions of law. It seems to the court pretty clear that the statute of limitations, under the evidence, had already run upon this case when the indictment was found; the three years had already run. It is not the fault of the attorneys for the government that this is so. They made all of this case that anybody could make; they have made all the case that the law and the facts warranted; but it seems to me that the facts and the law are against them.

There is no doubt in the mind of the court—the authorities are all to that effect—that the gist of an action for conspiracy under the statutes of the United States is the same as it always was at common law. The statutes of the United States do not undertake to define what a conspiracy is, or to create any new offense. They merely speak of the crime of conspiracy as a crime already recognized by law, and we have got to go to the common law and the decisions of the English and American courts to find out just what a conspiracy is, and what the limitations are. All the provision extra is that in order to complete the offense, so that an indictment will lie, there must be some overt act. The congress of the United States, as well as the legislatures of most of the states, have modified the common law to that extent,—that in order to be indicted and punished for conspiracy, the gist of the offense being an unlawful combination, there must be an overt act. Such grace is allowed by the statutes of several states and by the law of congress to the defendant,—that there must be some overt act. Any overt act, however slight, intended to effectuate the object of the conspiracy, and whatever its character may be, whether it is itself criminal or perfectly innocent in its nature, is sufficient to fix the offense and to make it indictable. Now, it seems to me the material question in this case is, when the statute of limitations commenced to run, whether these defendants might have been indicted, under the evidence of this conspiracy, in the spring of 1891; and that they might, seems to me quite clear from the testimony. In fact, the most damaging testimony in the case— nearly all the testimony in the case tending to show any original conspiring together or illegal combination between these different defendants—relates to a time prior to the three years previous to the filing of this indictment; that is, it relates to the late winter and early spring of 1891, when it was supposed that this land was to come into market, and lines of men were formed to homestead it. The letters of Mr. McCord to Mr. Day, who was acting as his principal agent in regard to the matter,—perhaps the most damaging evidence that has been introduced in the case against these defendants,—were written in March, 1891, and near-

ly all the other evidence tending to show the formation of a conspiracy for this illegal object of entering land contrary to law, and dividing the profits, relates to the spring of 1891. Now, then, the court cannot presume that this evidence was not introduced for the purpose of showing that a conspiracy existed then, when that is the evident effect of the evidence, and all the effect that it does have. If it was not introduced for that purpose, it is difficult to see why it should have been introduced at all. It is perfectly clear to the court that the evidence tends to show a conspiracy in the spring of 1891, and various overt acts in March and April, 1891, such as hiring men to go into line, hiring agents to procure them, and getting the men in line, and getting other men out of the line to put their men in, and all that kind of thing, that showed acts intended to effectuate the object of the conspiracy. Now then, it seems to me very clear that the statute began to run some time in March or April, 1891, on this offense, and it is a proposition that the court cannot give its assent to, that this transaction can be divided up into different conspiracies. It is admitted by plaintiff's counsel that these men might have been prosecuted, and that an indictment might have properly been found, in April, 1891. At the same time, they maintain that these acts of conspiracy in bringing in different persons to enter this land at subsequent periods may be divided up, and a separate prosecution maintained for every quarter section or piece of land that was entered; and for every man that was brought in there was a new conspiracy. I think the more rational doctrine is that the evidence shows, so far as it shows anything, that there was a conspiracy formed in the spring of 1891, and that overt acts various in number were committed or done under it to effect the objects of the conspiracy, and that the statute, as to these defendants, commenced to run at that time, and that the bringing in of Murray after the land was brought into market in the fall of 1891 was a mere carrying out of the original conspiracy,—a mere additional overt act in furtherance of the original illegal combination. That is all it amounts to. It did not amount to a separate conspiracy.

I have no doubt that the statute of limitations has stood in the way of this prosecution from the first, and that counsel for the government have felt the difficulty. They admit that the indictments may properly have been found in March, 1891; that the conspiracy to defraud the government was then formed by the defendants, and various overt acts performed intended to effectuate its objects. If this be so, it is difficult to see why the statute did not then begin to run. Otherwise, you would have a different period of limitation in conspiracies from what you have in other offenses against the government, which could not have been the intention of the law. The purpose evidently was to make a uniform rule, applicable to all offenses of the same grade. Counsel no doubt anticipated this difficulty, and sought to avoid it by alleging an overt act committed on October 23, 1891, so as to avoid the claim of the running of the statute. Now, to make good this contention, it is claimed that a conspiracy is a continuing offense.

No doubt a conspiracy is a continuing offense in this sense: that whenever an individual comes into the conspiracy, however late, he is considered as adopting all the previous acts of his co-conspirators, and is liable in the same degree with them. But that it is a continuing offense in the sense that, as to the first and original parties to the conspiracy, this statute begins to run anew from the time of the commission of every overt act, is a contention that the court is unable to affirm. It may be true that, as to Murray, who it is alleged was brought in to homestead a quarter section on October 23, 1891, the statute would not begin to run until he became a party to the conspiracy. The court does not decide that question, because it is not before the court, Murray not being on trial; but as to the defendants who the evidence for the prosecution is directed to show originated the conspiracy in March and April, 1891, and committed overt acts to effectuate its object, it seems pretty clear that the statute began to run from the time the first overt act was committed, some three years and eight months previous to the finding of the indictment. They would, of course, still be liable to prosecution for any distinct illegal act, like causing an entry to be made contrary to law, by which the government was defrauded, or procuring false affidavits to be made. The statute would run upon such distinct acts from the time of their commission, independent of when the conspiracy was originated and formed.

It is maintained here by counsel, but I do not think with much plausibility, that this is a question of fact that ought to be submitted to the jury. That might be so, if the evidence was conflicting. That rule would apply if the defendants' evidence was in, and there was a conflict of testimony upon these different points. Of course, then it would have to be submitted to the jury, but that is not this case. The whole case rests upon the testimony made by the prosecution. There is no conflict of testimony in the case made by the prosecution. It would not be proper for the counsel to claim that there is any conflict in the testimony, the defendants not having put in any testimony at all. It would not be for the interest of the prosecution to maintain that, and they do not claim it. Then the question is simply a question of law, and however much the court might be willing to shift the responsibility of deciding this case upon the jury, the court does not feel that it ought to do so. The responsibility must be taken and met wherever it properly belongs, and in the mind of the court the motion raises a pure question of law. Suppose this question should be submitted to the jury, and they should find that there was a separate conspiracy made in the fall of 1891, on which the statute of limitations had not run. Could the court say, on a motion for a new trial, that there was sufficient evidence to support such a verdict as that? I think not. I think the whole tendency of the evidence (and there is no conflict in it) is to show that the conspiracy was one indivisible thing, and was formed in the spring of 1891. Of course it was not consummated. It may never have been consummated. It is not necessary, in order to punish for a conspiracy, that it should be con-

summated; and while the counsel maintain the proposition that there can be no punishment until the object of the conspiracy is effected, that proposition is not maintainable. That is a contention that cannot be allowed for a moment, because there is nothing clearer, under the authorities, than that it is not necessary, to maintain an indictment for conspiracy, to show that the object of the conspiracy has been accomplished. All that is necessary to show is the illegal combination, and an overt act intended to effectuate the object of the conspiracy. I think it is the clear duty of the court to direct a verdict in favor of all the defendants, on the ground that the government has not made a case against any of them, and it will be so ordered.