UNITED STATES v. BLACK et al. (two cases).

(Circuit Court of Appeals, Seventh Circuit. January 13, 1908.)

Nos. 1,375, 1,376.

1. CRIMINAL LAW—FEDERAL PRISONERS—PROCEEDING FOR REMOVAL—EVIDENCE —PROBABLE CAUSE.

On an application to remove persons to another federal district where they were charged with violating Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), by conspiring to defraud the United States of public lands subject to entry under Timber and Stone Act of June 3, 1878, c. 151, § 1, 20 Stat. 89 (U. S. Comp. St. 1901, p. 1545), certified copies of General Land Office records showing that all the entries of public lands mentioned in the indictment were perfected and issued therefor prior to all the alleged overt acts under the alleged conspiracy, and more than three years before the indictment was filed, were admissible on the question of probable cause of the charge.

2. SAME—COMMISSIONER'S COMMITMENT.

Since proceedings before a United States Commissioner on the arrest of persons indicted in another district were preliminary only, for the apprehension of and to hold accused either for recognizance or pending application for removal, the commitment had completely served its purpose when such application was denied, and accused became entitled to their discharge, for which an order was needful.

3. CONSPIRACY—CRIMINAL CONSPIRACY—ESSENTIALS.

The offense of conspiracy, under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), providing punishment where persons conspire either to commit any federal offense or to defraud the United States, etc., consists in the

conspiracy alone, and not in both the conspiracy and the acts done to effect its object.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, pp. 1454–1461; vol. 8, p. 7613.]

,4 CRIMINAL LAW—CONSPIRACY—LIMITATIONS—COMMENCEMENT OF PERIOD.

Under an indictment charging a violation of Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), providing a penalty where persons conspire to defraud the United States, and one of them does any act to effect the object of the conspiracy, by conspiring to defraud the government of public lands subject to entry under Timber and Stone Act of June 3, 1878, c. 151, § 1, 20 Stat. 89 (U. S. Comp. St. 1901, p. 1545), an averment of payment, on certain dates within three years of the filing of the indictment, to procure false application, final proof and entry for the lands, does not charge overt acts within section 1044 (U. S. Comp. St. 1901, p. 725), limiting certain federal prosecutions to three years from the commission of the offense. Any violation of section 5440 was complete before certificates of purchase covering the lands were issued, though such payment was made subsequently.

[Ed. Note.—Commencement of period of limitations against continuing offenses, see note to Ware v. United States, 84 C. C. A. 519.]

5. SAME.

To constitute a violation of Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), providing a penalty where persons conspire to defraud the United States and one of them does any act to effect the object of the conspiracy, by conspiring to defraud the government of public lands subject to entry under Timber and Stone Act of June 3, 1878, c. 151, § 1, 20 Stat. 89 (U. S. Comp. St. 1901, p. 1545), it is not essential that a patent for the lands be issued and delivered; a violation of the section not depending upon the success of the conspiracy, and becoming complete when the final step was taken by the conspirators in inducing fraudulent entries and the issuance of certificates of purchases.

Appeals from the District Court of the United States for the Eastern District of Wisconsin.

The United States appeals (separately) from two final orders of the District Court, entered July 27, 1906, in favor of the appellees, upon proceedings on behalf of the government to obtain an order for their removal to the District of Oregon, for trial under an indictment there found against the appellees. These orders are (1) discharge of the appellees upon returns to writs of habeas corpus and certiorari, and (2) denial of an application made before the District Judge for their removal (under section 1014, Rev. St. [U. S. Comp. St. 1901, p. 716]) to the District of Oregon, both applications being submitted and heard together—reported as Ex parte Black (D. C.) 147 Fed. 832—and presented in this appeal on a single record.

The indictment referred to purports to charge the appellees with violation of section 5440, Rev. St. (3 U. S. Comp. St. 1901, p. 3676), in conspiring to defraud the United States of the possession, use, and title to public lands, therein specified, described as subject to entry under congressional enactment known as the "Timber and Stone Act" of June 3, 1878, c. 151, § 1, 20 Stat. 89 (2 U. S. Comp. St. 1901, p. 1545). It embraces four counts, averring, in substance, that the appellees conspired with parties named and others who are unknown, from September 1, 1902, up to June 20, 1903, for the fraudulent purposes stated, to be accomplished by paying money to sundry persons and thereby inducing them "to make false, fraudulent, fictitious, feigned, untrue, and illegal entries" of and upon the lands described; and each count avers a payment made, in manner stated, to a person named, to accomplish the object of the conspiracy. The first, second, and fourth counts, specify as overt acts, payments made to the person named, to procure false application, final proof, and entry for the lands described, and that such false entry was thereupon obtained for the use and benefit of the appellees and other conspirators —stating the date of such payment to the entry man, without specification

of fact or date in reference to the several proceedings for entry —such payments being stated as made respectively, (1) April 4, 1903, (2) May 23, 1903, and (4) April 4, 1903. The third count differs from the others in specifying, as the overt act, that payment was made on April 20, 1903, to a United States commissioner named, before whom applications and final proofs were to be made and certified to induce him "to fraudulently certify" thereupon an entry described, and that such fraudulent certificate was thereby obtained to effect an object of the conspiracy.

The appellees were citizens of and residents in the state of Wisconsin, and upon complaint made for their commitment to answer this indictment in the District of Oregon, were brought before a commissioner for the Eastern District of Wisconsin. Upon the hearing, proof was tendered to the commissioner on behalf of the accused, in a certified copy of the records of the General Land Office, showing that all the lands mentioned in the indictment were entered and sold, and certificates of purchase issued thereupon, on or prior to March 17, 1903—all more than three years prior to the filing of such indictment. This proof was excluded by the commissioner, and the appellees were committed to the custody of the marshal on their refusal to file recognizance. Upon writs of habeas corpus and certiorari, the proceedings before the commissioner were brought for hearing in the District Court; and therewith an application was submitted to the District Judge, for a warrant of removal under section 1014. The record proof of the facts and dates of completion of entries and issuance of certificates of purchase for the lands in question (rejected by the commissioner) was received upon such hearing, and was uncontroverted. In conformity with the opinion of the District Judge, that such proof was admissible—whether upon one or the other hearing, or both, does not appear— and that the prima facie evidence of probable cause arising from the indictment was thereby disproved, the orders appealed from were entered and the prisoners discharged from custody.

William C. Bristol, for appellant.

A. S. Larson and Hugh L. Ryan, for appellees.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). When the present appeals were taken, from the orders (1) denying the application for removal of the appellees to the District of Oregon for trial under the indictment there found, and (2) discharging them from custody under the mittimus of the commissioner, no decision of the Supreme Court, as the ultimate authority, appears to have settled, in express terms, the doctrine applicable to such removal proceedings. In the recent case, however, of Tinsley v. Treat, 205 U. S. 20, 27 Sup. Ct. 430, 51 L. Ed. 689, these propositions were directly involved and established: That the duty of the District Judge, on an application for removal under section 1014, is judicial, not merely ministerial, in the inquiry which it involves of probable cause for the charge upon which removal is sought; that thereupon the accused is entitled "to the judgment of the District Judge as to the existence of [such] probable cause" under evidence tendered; that the indictment there presented "cannot be treated as conclusive" of such cause, and (if valid on its face) is only prima facie evidence, which may be overcome by proof; and that evidence to that end is not only admissible upon the inquiry, but must receive just consideration, in so far as it tends to disprove either jurisdiction for trial or amenability under the charge.

The appellees tendered competent evidence from the records of the General Land Office that all the entries of public lands mentioned in

the indictment were perfected and certificate of purchase issued therefor, prior to all of the alleged overt acts under the alleged conspiracy, and more than three years prior to the filing of the indictment. Such proof was clearly admissible, within the above-stated doctrine, for the purposes of this judicial inquiry of probable cause, upon the application for removal; so that error is not well assigned for such reception. With this uncontroverted fact of all the entries in evidence, the removal was rightly denied, if no foundation remains for prosecution under the indictment; and the questions for review, upon the merits of the controversy as it appears to have been presented below, are: (1) Whether the facts averred in the indictment constitute an offense; and (2) if an offense appears therefrom, whether the appellees are absolved from liability by the above-mentioned proof of entries.

The conclusion by the District Judge that no probable cause existed for a warrant of removal to answer the indictment, necessarily involved release of the accused from the commitment pending such hearing; and whether such order of discharge was thus incidental, as of course, to denial of the warrant, or is referable to the writ of habeas corpus, is not material for the purposes of this review. As the proceedings before the commissioner were preliminary only, for apprehension of and holding the accused either for recognizance or pending application for removal, the commitment had completely served its purpose when such application was denied, and the appellees became entitled to their discharge, for which an order was needful. Whatever proceedings were appropriate to that end, all parties were before the court, with the commissioner's return of the record under the writs of habeas corpus and certiorari, so that the exercise of jurisdiction for their release is unquestionable—resting alone on the finding in the order of "no legal cause" for their further restraint. The questions discussed in the appellant's brief, whether the commissioner erred in excluding the evidence offered before him, and whether either writ authorized review of his rulings, are not involved in the present inquiry; nor are the numerous authorities which are there cited for the general rule in habeas corpus proceedings—that jurisdictional defects only are cognizable for discharge from restraint under adjudication thereof by a competent court—applicable in any sense to the relief granted below.

Both orders, therefore, rest alike upon the finding of no probable cause for a warrant of removal, and if no indictable offense appears, when the facts averred in the indictment are supplemented by the proof that all entries of the lands referred to were completed on or before March 17, 1903, the orders were rightly granted, irrespective of the question discussed in the briefs, whether the indictment is sufficient on its face to authorize removal. With the procurement of these entries and purchases alleged in the indictment as the sole object of the conspiracy charged, we perceive no difficulty in the way of determining the merits of the finding on which both orders are predicated.

The offense of conspiracy, involved in these charges, is created by section 5440 of the Revised Statutes, and differs from the like offense at common law in the express provision for a so-called locus penitentiæ —that "one or more of such parties [conspiring] do any act to effect

the object of the conspiracy." Its ingredients are well settled, as defined in United States v. Britton, 108 U. S. 199, 201, 2 Sup. Ct. 531, 534, 27 L. Ed. 698, and subsequent decisions (10 Rose's Notes U. S. 561), to consist "of the conspiracy alone," and not "of both the conspiracy and the acts done to effect" its object. No specific acts are set out in the indictment as done by either alleged conspirator to accomplish the purpose of the conspiracy, except the several payments to persons named in the counts respectively, for service and acts in carrying out the conspiracy, alleged as having been induced and procured by such payments—with the date of payment specified, but no mention of the date of service. The earliest date stated for these payments is April 4, 1903, while others are specified in May and June, respectively; and the indictment bears date April 3, 1906. Under section 1044 Rev. St. (U. S. Comp. St. 1901, p. 725), which is applicable to prosecutions under section 5440 (United States v. Hirsch, 100 U. S. 33, 36 [25 L. Ed. 539]), the indictment must be found "within three years next after such offense shall have been committed," so that both fact and date of the overt act upon which the offense is charged are of the utmost materiality upon the present issue. If either of these averments of payment so made can be accepted, in the light of the proven facts, as the inception of liability under the charge of conspiracy, the date stated is within this period of limitation; and if not thus applicable, the further question thereupon—raised in the opinion below and on this appeal, as to the operation of such limitation—is not involved in the consideration, namely, whether such period runs from the first disclosure of an overt act, or remains open for succeeding acts in continuation of the conspiracy, to run from the final act.

Whatever may appear from the indictment as the relation of these payments and of the payees to the alleged conspiracy, the proof of the fact and date of completion of entries and issuance of certificates of purchase establishes beyond controversy that each payment was made not as an "act to effect the object of the conspiracy," nor to procure services to that end, but in settlement or payment for a pre-existing service or obligation; that such service was necessarily completed and the obligation incurred prior to the date of the last certificate of purchase, March 17, 1903; so that neither fact nor date of the payment so made can serve as an overt act for charging conspiracy under section 5440, and thus evade the above-mentioned limitation. Assuming that such payment may be provable in support of the charge, it cannot be received by way of direct proof, as an act in the execution of the conspiracy, but as circumstantial evidence tending to show, either the fact of conspiracy or some of the participants therein. The facts that final entries were made and purchases certified are presumptive, if not decisive, under the terms of the statutory provisions therefor, known as the "Stone and Timber Act," that all proceedings or service required to be performed to that end, by either and all of the parties named as conspirators or payees, had been entirely performed, when these certificates of purchase were issued, in so far as concerns the conspiracy to defraud the United States. If the appellees were engaged, as alleged, in a fraudulent conspiracy for that object, and pro-

cured the services and action of the several entrymen and the com-missioner named as payees respectively, each had then committed and completed every act, fraudulent or otherwise, to accomplish the entries and complete purchases as designed—inclusive, as of course, of the alleged engagement and service for which these subsequent payments were made. Thereafter no occasion remained for further action on the part either of the conspirators or other persons engaged to effect that object; and no opportunity was open to either conspirator for immunity under the locus penitentiæ provision of section 5440. Whether settlements between the conspirators or with agents, for profits or services in the conspiracy, were then or subsequently made, or were refused, are facts of no materiality for the operation of either statute—section 5440 or 1044.

We are of opinion, therefore, that any violation of section 5440 was committed and completed before the certificates of purchase were issued, and that no overt act is charged within the period limited by section 1044, however the averments of the indictment are considered.

The contention that the object of the conspiracy was not completed until a patent was issued and delivered is untenable, as we believe, in any view of the effect of the final entries and certificates of purchase thereunder, for the twofold reasons, that violation of the statute (a) in nowise depends upon the success of the conspiracy, and (b) became complete (as before stated) when the final step was taken on the part of the conspirators. What course has been or may be adopted by the Land Office or other departments in reference to these entries, or in issuing or withholding the formal patents thereupon, is plainly immaterial under this indictment. The general doctrine in reference to public lands subject to entry, appears to be settled, that a tract "ceases to be subject to the disposal of the United States," when it is entered, paid for, and so certified by the Land Office, although no patent has been delivered (Cornelius v. Kessel, 128 U. S. 456, 460, 9 Sup. Ct. 122, 32 L. Ed. 482, and United States v. Schurz, 102 U. S. 378, 396, 26 L. Ed. 167; 9 Rose's Notes U. S. 1091); but the status of entries made as averred in the indictment is neither involved nor proper for comment in this opinion.

The orders appealed from are affirmed.