## UNITED STATES v. KISSEL et al.

(Circuit Court, S. D. New York. October 26, 1909.)

1. MONOPOLIES (§ 29*)—ELEMENTS OF OFFENSE—ANTI-TRUST STATUTE.

To constitute the offense of conspiracy in restraint of interstate or foreign commerce, or to monopolize such commerce, under the Sherman anti-trust act (Act July 2, 1890, c. 647, §§ 1, 2, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]) unlike a conspiracy to commit an offense against or to defraud the United States, under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), no overt act is necessary; the conspiracy itself being the offense.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 19; Dec. Dig. § 29.*]

2. MONOPOLIES (§ 12*)—ANTI-TRUST ACT—"CONSPIRACY."

The word "conspiracy," as used in the Sherman anti-trust act (Act July 2, 1890, c. 647, §§ 1, 2, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), has substantially the same meaning as the word "contract."

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*

For other definitions, see Words and Phrases, vol. 2, pp. 1454–1461; vol. 8, p. 7613.]

3. CRIMINAL LAW (§ 149*)—CONSPIRACY IN VIOLATION OF ANTI-TRUST LAW—LIMITATION OF CRIMINAL PROSECUTION.

A conspiracy in restraint of interstate commerce, or to monopolize the same, in violation of the Sherman anti-trust act (Act July 2, 1890, c. 647, §§ 1, 2, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), by causing a manufacturing corporation to suspend business in the interest of a competing concern, by obtaining control of its stock through a contract, was complete at latest when its object was fully accomplished by the making of the contract and the election of a board of directors who voted to cease business; and a prosecution therefor is barred in three years from that time, under Rev. St. § 1044 (U. S. Comp. St. 1901, p. 725).

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 273–275; Dec. Dig. § 149.*]

4. CRIMINAL LAW (§ 150*)—CRIMINAL PROSECUTION—LIMITATION.

If a conspiracy to commit a crime has been carried out, and the crime committed, those who committed it are subject to whatever penalties the law imposes, and entitled to whatever protection the law affords; and if

---

the statute of limitations is a bar to a prosecution for the crime, that bar cannot be lifted by a prosecution for a conspiracy to commit that crime.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 275; Dec. Dig. § 150.*]

5. CRIMINAL LAW (§ 288*)—SPECIAL PLEA OF LIMITATION.

The defense of the statute of limitations may be raised in a criminal case by a special plea before trial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 660, 661;. Dec. Dig. § 288.*]

Gustav E. Kissel and Thomas B. Harned, indicted with the American Sugar Refining Company and others, filed pleas in bar to the indictment, to which the government demurred. Demurrers overruled, and pleas sustained.

Henry A. Wise, U. S. Atty. (Charles F. Brown, John W. H. Crim, and James R. Knapp, of counsel), for the United States.

William D. Guthrie and William Church Osborn, for defendant. Kissel.

George Whitefield Betts, Jr., and Francis H. Kinnicutt, for defendant Harned.

HOLT, District Judge. These are demurrers filed by the government to pleas in bar interposed by the defendants Kissel and Harned to the indictment. The indictment charges the defendants with a conspiracy in restraint of interstate commerce, in violation of Act July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), commonly called the "Sherman Act." The defendants are the American Sugar Refining Company and its directors, and certain other persons. The indictment alleges, in substance, that the defendants conspired to prevent the Pennsylvania Sugar Refining Company from doing business. It is alleged that this result was accomplished; that the defendant Kissel, acting secretly as agent of the American Sugar Refining Company, made a contract to loan to Adolph Segal $1,250,000, upon a note of Segal secured by certain collateral, among which collateral were 26,000 shares, being a majority, of the stock of the Pennsylvania Sugar Refining Company; that, having thus obtained such majority of the stock, a new board of directors, in the interest of the American Sugar Refining Company, was elected; that said board immediately voted to close the refinery of the Pennsylvania Sugar Refining Company; and that it has since done no business. The defendants Kissel and Harned have pleaded, in bar of the prosecution, the statute of limitations; and the defendant Kissel has also pleaded in bar that, having produced on the trial of a civil action certain documents tending to prove certain facts necessary to be proved in this case, he is entitled to immunity from prosecution under this indictment.

Admittedly, the general three-year statute of limitations for crimes not capital contained in section 1044 of the United States Revised Statutes (U. S. Comp. St. 1901, p. 725), applies in this case. It is also. conceded that the execution of the contract between Kissel and Segal, by which the loan was made and the control of a majority of the stock of the Pennsylvania Company obtained, the consent of the Champion

Construction Company to the pledge of the stock, the power of attorney by that company to Kissel, the election of the new directors, the meeting of the new board, at which the vote was passed that the Pennsylvania Sugar Refining Company should thereafter refrain from carrying on business until the further order of said board, the advance of $1,250,000 by the American Sugar Refining Company to Kissel, and the loan of that amount by Kissel to Segal, were all done and the entire transaction closed in all respects on or before January 4, 1903. Therefore the offense alleged in this indictment was complete, and this indictment might have been brought on January 5, 1904. The indictment was not filed until July 1, 1909, more than five years after the time when the alleged conspiracy was entered into and its object entirely accomplished. Obviously, therefore, the statute of limitations is a bar to this prosecution, unless the crime charged in the indictment is a continuing offense, or acts have occurred which have renewed the offense and started again the running of the statute.

A conspiracy, in its legal sense, is a misdemeanor at common law. It has been defined as an agreement by two or more persons to do an illegal act, or to do a legal act by illegal methods. Such a conspiracy, if entered into, could be criminally punished at common law, whether any act in furtherance of it was done or not. Section 5440 of the United States Revised Statutes (U. S. Comp. St. 1901, p. 3676) provides that if two or more persons conspire either to commit any offense against the United States, or to defraud the United States, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to criminal punishment. Under this statute, a mere conspiracy is not an offense; but, in addition to the conspiracy, one or more of the parties to it must do some act to effect its object before a criminal prosecution can be maintained. The first section of the Sherman act provides that:

"Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy shall be deemed guilty of a misdemeanor."

The second section of the act provides that:

"Every person who shall monopolize or attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of the trade or commerce among the several states or with foreign nations, shall be deemed guilty of a misdemeanor."

This indictment is necessarily brought under these provisions of the Sherman act. No indictment can be brought in the United States courts for the offense of conspiracy at common law, because it has not been made an offense by any United States statute. Nor could this indictment have been brought under section 5440 of the United States Revised Statutes, because there is no law of the United States making a conspiracy in restraint of trade or to monopolize trade an offense against the United States except the Sherman act, and there cannot be a conspiracy to engage in a conspiracy. Under the Sherman act no overt act is necessary to the commission of the offense. That provides

that every person who engages in a conspiracy in restraint of trade or commerce, or to monopolize trade, is guilty of the offense. The question in this case, therefore, is when the statute of limitations begins to run in an indictment for conspiracy under the Sherman act.

The law of conspiracy has been the subject of a great deal of over-refined discussion, and the authorities upon the subject are quite conflicting. Some hold a conspiracy to be an offense complete when entered into, and upon which the statute of limitations immediately begins to run. Others hold it to be a continuing offense, from which it is argued that the statute of limitations never begins to run against a conspiracy until it is abandoned and whatever result has been accomplished by it annulled. The government's counsel, upon the argument, claimed that the defendants, having once entered upon the conspiracy and closed the refinery of the Pennsylvania Company, continued to be engaged in the conspiracy every day so long as the refinery was closed. It would follow, from this position, that the only way in which the defendants could start the statute of limitations running would be to rescind the vote to close the refinery, have the directors friendly to the American Sugar Company resign, and deliver back to the original holders the stock taken as collateral. No authorities have been cited sustaining such a position. Most of the cases cited have arisen in prosecutions based upon section 5440, under which the indictment must not only charge the conspiracy, but one or more overt acts.

Some authorities hold that the statute of limitations begins to run in such prosecutions as soon as one overt act has been committed, and that, if more acts in furtherance of the conspiracy are performed, that does not stop the running of the statute. United States v. Owen (D. C.) 32 Fed. 534; United States v. McCord (D. C.) 72 Fed. 159; Ex parte Black (D. C.) 147 Fed. 832; United States v. Biggs (D. C.) 157 Fed. 264. Other cases hold, in substance, that each additional overt act starts the statute running anew. United States v. Bradford (C. C.) 148 Fed. 413; Ware v. United States, 154 Fed. 577, 84 C. C. A. 503, 12 L. R. A. (N. S.) 1053; United States v. Brace (D. C.) 149 Fed. 874. In Ware v. United States, 154 Fed. 577, 84 C. C. A. 503, 12 L. R. A. (N. S.) 1053, it is held that there cannot be a conviction upon the original conspiracy and overt acts which have taken place more than three years before the finding of the indictment; that there must be proved a conspiracy within the three years, as well as an overt act; and that, although the original conspiracy is competent evidence upon the question whether a new or continuing conspiracy has been entered into within the three years, it alone is insufficient to prove such new conspiracy. See, also, United States v. Black, 160 Fed. 431, 87 C. C. A. 383.

These decisions were all made in other districts. With entire respect for the judges making them, it is impossible to harmonize them. In my opinion, the cases which hold that the statute begins to run after the first overt act, and is not stopped by subsequent overt acts in pursuance of the same conspiracy take the correct view. But in any event the decisions under section 5440 of the United States Revised Statutes are not strictly applicable to this prosecution.

The word "conspiracy" is usually employed with a sinister meaning; but, in my opinion, as used in the Sherman act, it has substantially the same meaning as the word "contract." A conspiracy in restraint of trade is nothing but a contract or agreement between two or more persons in restraint of trade. If this indictment had charged, in the language of the act, that the defendants had made a contract in restraint of trade, I suppose no one would claim that the statute of limitations did not begin to run upon the execution of the contract. How can the government impose a different liability on the defendants by calling the same thing a conspiracy? I think that the offense was complete in this case when the contract between Kissel and Segal was made. It was unquestionably complete before January 5, 1904, before which date the contract was carried out in all respects and the object of the alleged conspiracy accomplished. If, however, the doctrine of that class of cases which hold that each new overt act constitutes a new offense, in prosecutions under section 5440, were to be followed in this case, the overt acts alleged to have occurred within three years, necessary to constitute a new offense, must be acts which have a tendency to carry out the object of the conspiracy, or in some way tend to make it effectual (United States v. McLaughlin [D. C.] 169 Fed. 307; United States v. Black, 160 Fed. 431, 87 C. C. A. 383); and each defendant must have participated intentionally in an overt act done within the three years prior to the indictment (Ware v. United States, 154 Fed. 579, 84 C. C. A. 503, 12 L. R. A. [N. S.] 1053).

So far as the defendant Harned is concerned, he had nothing to do with any overt act alleged in the indictment after December 30, 1903. As to the defendant Kissel, the overt acts alleged in the indictment as occurring within three years before it was filed, in my opinion, are not acts which had any tendency to carry out the object of the conspiracy, or to make it effectual. The overt acts so alleged are certain resolutions adopted by the directors of the American Sugar Refining Company, agreeing to indemnify the president and counsel for any liability in the Segal matter, certain letters written by one of the defendants to the secretary of the American Sugar Refining Company, and a bill for disbursements rendered by the defendant Kissel to the American Sugar Refining Company, all in the year 1907. In my opinion, these alleged overt acts had no tendency to accomplish the object of the conspiracy. The object was completely accomplished before January 5, 1904. One of the letters, dated February 15, 1907, alleged in the indictment as an overt act, shows that the question whether criminal proceedings should be brought had been under consideration by the Department of Justice before that time, but it took no action until this indictment was filed.

The case of United States v. Irvine, 98 U. S. 450, 25 L. Ed. 193, although that was not a prosecution for a conspiracy, seems to me to state the principle applicable to such a case better than any other authority that has been cited. In that case an indictment was found for a violation of the act making it a misdemeanor for a pension agent to wrongfully withhold from a pensioner the whole or any part of the pension due to him. The indictment was brought more than three

years after the pension money had been received by the pension agent and demanded from him by the pensioner. The trial court held that the offense prohibited by the statute was a continuing offense, and that so long as the defendant continued to withhold the pension money the offense was not barred by the statute of limitations. The Supreme Court overruled that decision. Mr. Justice Miller, in the opinion, says:

"There is in this but one offense. When it is committed, the party is guilty, and is subject to criminal prosecution; and from that time, also, the statute of limitations applicable to the offense begins to run. It is unreasonable to hold that 20 years after this he can be indicted for wrongfully withholding the money, and be put to prove his innocence after his receipt is lost, and when perhaps the pensioner is dead. * * * He pleads the statute, * * * which was made for such a case as this; but the reply is: 'You received the money. You have continued to withhold it these 20 years. Every year, every month, every day, was a withholding within the meaning of the statute.' We do not so construe the act. Whenever the act or series of acts necessary to constitute a criminal withholding of the money have transpired, the crime is complete, and from that day the statute of limitations begins to run against the prosecution."

There seems to be an increasing tendency in recent years for public prosecutors to indict for conspiracies when crimes have been committed. A conspiracy to commit a crime may be a sufficiently serious offense to be properly punished; but, when a crime has been actually committed by two or more persons, there is usually no proper reason why they should be indicted for the agreement to commit the crime, instead of for the crime itself. A large class of federal prosecutions for commercial offenses, such, for instance, as violations of the interstate commerce act, the Sherman act, the bankrupt act, the acts relating to public lands, and many others, now habitually take the form of indictments for conspiracies to commit crimes, the actual commission of which is also usually alleged in the indictment. Prosecutors seem to think that by this practice all statutes of limitations and many of the rules of evidence established for the protection of persons charged with crime can be disregarded. But there is no mysterious potency in the word "conspiracy." If a conspiracy to commit a crime has been carried out, and the crime committed, the crime, in my opinion, cannot be made something else by being called a conspiracy. The men who have committed the crime are liable to whatever penalties the law imposes and to whatever protection the law affords. If the statute of limitations is a bar to a prosecution for the crime, that bar, in my opinion, cannot be lifted by a prosecution for a conspiracy to commit that crime.

Statutes of limitations are beneficial statutes. The interests of the community and justice to persons charged with crime require that offenses be promptly prosecuted. Statutes of limitations should be given a plain and sensible construction. Their effect should not be frittered away by a strained interpretation, based on subtle and refined reasoning. The government has waited before bringing this prosecution for 5½ years after the alleged offense was complete, and, in my opinion, the statute of limitations is a bar to this indictment.

This conclusion makes it unnecessary to consider the doubtful question raised by the plea of immunity interposed by the defendant Kissel.

The ground of demurrer that the plea in bar of the statute of limitations will not lie, because the plea is in substance a plea of not guilty, seems to me, if I correctly understand it, wholly untenable. The defense of the statute of limitations could be raised on the trial under the general plea of not guilty; but it can also be raised by a special plea before the trial.

The demurrers to the pleas in bar interposed by the defendants Kissel and Harned are overruled, and judgment dismissing the indictment as to said defendants may be entered.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes