### UNITED STATES v. BURKE et al.

#### (District Court, S. D. New York. August 14, 1914.)

CONSPIRACY (§ 27*)—CRIMINAL LAW (§ 97*)—CONSPIRACY TO DEFRAUD THE UNITED STATES—OVERT ACTS—JURISDICTION.

An indictment for conspiracy to defraud the United States charged the object of the conspiracy to be the bribery of one defendant as a government agent to make purchases on behalf of the commissary department from his codefendant. The overt acts charged were the receipt by such agent of drafts from his codefendant in the Canal Zone, which were sent by him to a bank in New York and by the bank presented for acceptance and collected from agents of the drawer. *Held*, that such collections, having been made while the conspiracy was being carried out, constituted overt acts in furtherance thereof, and that a District Court in New York had jurisdiction of the offense.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 38, 39; Dec. Dig. § 27;* Criminal Law, Cent. Dig. §§ 177–189, 191; Dec. Dig. § 97.*]

Criminal prosecution by the United States against John Burke and Jacob L. Salas. On demurrer to indictment by defendant Salas. Overruled.

H. Snowden Marshall, U. S. Atty., Frank E. Carstarphen, Ben A. Matthews, and Harold A. Content, Asst. U. S. Attys., all of New York City.

Phanor J. Eder, of New York City (Everly M. Davis, of New York City, of counsel), for defendant Salas.

GRUBB, District Judge. The indictment charges that between January 1, 1908, and February 9, 1914, John Burke and Jacob L. Salas did unlawfully conspire to defraud the United States; the agreement consisting of a promise on the part of Burke to cause purchases on behalf of the commissary department to be made from Salas, and

in consideration therefor a promise of Salas to cause large sums of money to be paid to Burke. The overt acts charged consist in the delivery in the Canal Zone by Salas to Burke of drafts on May 29, 1909, July 27, 1911, and July 3, 1913, and the receipt of said drafts by said Burke. Acceptance and payment and receipt of payment of these drafts by agents of Burke and Salas in the city of New York are laid as overt acts, giving jurisdiction in the Southern district of New York. The question presented by the demurrer is whether the alleged payments constitute overt acts to effect the object of the conspiracy.

This matter comes on for determination of a demurrer to the indictment, upon the ground that the District Court for the Southern District of New York is without jurisdiction of the offense; the contention being that the indictment shows that the conspiracy was formed between the defendants in the Canal Zone, and fails to show the commission of any overt act within the jurisdiction of this court. It is not clear that the question, intended to be presented, can be raised by a demurrer to the indictment, in view of the fact that the indictment alleges, at least as a conclusion, that the payments, relied upon by the plaintiff, were overt acts to effect the object of the conspiracy.

However, after considering the matter upon the merits, I have reached the conclusion that the averments of the indictment relating to defendant Burke's collection of the drafts in this district through a local bank give this court jurisdiction of the offense. The collecting bank in New York City was an agent of defendant Burke in presenting and receiving acceptance and payment of the draft, and its acts in so doing are Burke's acts; and this is true, though the collecting bank was an innocent agent and not a party to the conspiracy. If the defendant Burke had sent a person from the Canal Zone to New York City with the drafts, and this person had there collected them and received payment from Salas or his agent, it is clear the act of that person would have been that of Burke as much as if done by Burke himself. It is no less true of the collecting bank's act.

The facts of the case of Ex parte Black (D. C.) 147 Fed. 832, and 160 Fed. 431, 87 C. C. A. 383, relied upon by the demurrant, show that the payments relied upon by the government in that case as overt acts were made after the conspiracy had been fully completed, and could not, therefore, have been done to effect its object. In that case the object of the conspiracy was to effect a fraudulent entry of public lands. The acts essential to the conspiracy were the successive steps necessary to be taken in the land office to complete the entry. These steps had been taken and the entry completed long before the payments relied upon as overt acts were made. The statute of limitations had barred the acts constituting the entry, and the case was sought to be taken out of the influence of the statute by laying the subsequent payment of money, made after the conspiracy had successfully ended, as an overt act.

In this case the object of the conspiracy alleged in the indictment was to bribe the defendant Burke, by a series of payments of money to him by the defendant Salas, to induce him to purchase supplies

for the plaintiff from Salas. This in itself was a fraud upon the United States, as was held by the Supreme Court in the case of Crawford v. United States, 212 U. S. 183, 29 Sup. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392, and it is a conspiracy to commit this fraud that is charged in the indictment. The payment of money to the defendant Burke as a bribe was the sole object of the conspiracy alleged in the indictment, and constituted the means by which the conspiracy was to be carried out. In the case of a conspiracy to fraudulently conceal assets from a trustee in bankruptcy, it would not be contended that an act of actual concealment by one of the conspirators was not an overt act to effect the object of the conspiracy, yet the gist of the offense which was the object of the conspiracy in that case was the fraudulent concealment. So, in this case, the gist of the offense, which is the object of the conspiracy, is the payment of a bribe, and it is equally clear that a payment for that purpose may constitute an overt act to effect the object of the conspiracy. The court in the Black Case, relied upon by the defendant, would probably have reached a different conclusion if the conspiracy in that case had been still in progress when the payments were made.