UNITED STATES v. BREESE et al.

(District Court, W. D. North Carolina. August 10, 1908.)

GRAND JURY (§ 5*)—QUALIFICATION OF JURORS—NORTH CAROLINA STATUTE.

Code N. C. § 1722, as it stood in 1897, providing that grand jurors should be selected from persons only who had paid tax for the preceding year, does not disqualify a person from being a legal grand juror who did not own property above the amount exempt from taxation, and was not therefore assessed with any tax for the preceding year.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. § 12; Dec. Dig. § 5.*]

On Motion to Quash Indictment.

See, also, 172 Fed. 765.

A. E. Holton, U. S. Dist. Atty.

Moore & Rollins, Adams & Adams, and Locke Craig, for defendants.

NEWMAN, District Judge. This is a motion to quash the indictment in the above-named case upon the ground that certain members of the grand jury that found the bill of indictment now under consideration had not at their time of service upon the grand jury paid taxes for the preceding year in conformity with the requirements of the statute of North Carolina on that subject, which is as follows:

"The commissioners for the several counties, at their regular meeting on the first Monday of June in each year, shall cause their clerks to lay before them the tax returns for the preceding year for their county, from which they shall proceed to select the names of such persons only as have paid tax for the preceding year and are of good moral character and of sufficient intelligence." Code, § 1722.

The bill of indictment now before the court was found at Greensboro, N. C., October 6, 1897. Since that time other bills of indictment have been found against the above-named defendants separately, and there has been one trial of Dickerson resulting in a conviction in 1899, the judgment in which case was reversed by the

Circuit Court of Appeals in 1901, and several trials of Breese, resulting first in a conviction, which was reversed by the Circuit Court of Appeals (Breese v. United States, 106 Fed. 680, 45 C. C. A. 535; Id., 108 Fed. 804, 48 C. C. A. 36). On the second and third trials the jury failed to agree, and the fourth trial in 1904 resulted in a verdict of guilty on certain counts in the indictment and judgment of imprisonment against Breese in the Atlanta penitentiary. This last case was taken to the Circuit Court of Appeals (Breese v. United States, 143 Fed. 250, 74 C. C. A. 388), and there the case was reversed on the ground that two of the grand jurors who found the bill of indictment in that case had not paid taxes for the year preceding the one in which they served on the grand jury. The motion to quash the indictment in that case was entertained and heard because of an order made November 6, 1897, by Judge Dick, presiding in the District Court at Asheville at that time, when the defendant Breese was arraigned and pleaded not guilty. The order in that case was as follows:

"The United States v. W. E. Breese.

"Filed November 6th, 1897.

"In the above entitled action it is ordered by the court that the defendant, being now arraigned, be and he is now required to enter his plea to the indictment in said cause and he does so plea not guilty thereto, but such plea shall not operate or have the effect to prevent him taking advantage upon motion in arrest of judgment or on a motion for a new trial of all matters and things which could be taken advantage of by motion to quash or demurrer. Upon motion in arrest of judgment or for a new trial, all such matters and things shall be heard and determined as if the same were being heard upon motions to quash or demurrer. This order shall apply to any and all other indictments pending in this court against the defendant.

"Robert P. Dick, U. S. Judge.
"Concurred in. Covington, Assistant United States Attorney."

It appears from the records of this court that a similar order to the one taken above in the Breese Case was taken in separate cases against each of the other defendants, Dickerson and Penland, so that the three defendants were each arraigned, pleaded not guilty and had the benefit of the order just quoted. The District Attorney insists that this motion to quash comes too late. There is much ground for this insistence. The defendants not only have waited for more than 10 years to make this question, but they have even had two years since the decision of the Circuit Court of Appeals in the Breese Case on this subject. But assuming, without deciding, that this motion to quash is made in apt time, I do not believe that upon its merits it can be sustained. In the motion as filed it was urged that three jurors, James Davis, Jr., A. R. Couch, and N. W. Blackburn, members of the grand jury finding this bill, had failed to pay taxes for the preceding year. The motion was abandoned before the hearing as to Davis, and abandoned upon the hearing as to Couch, and is only urged now as to N. W. Blackburn. It appears from the records that no taxes were listed or assessed against N. W. Blackburn for 1896, which is the year in question here, in the country of Forsyth, where he lived

at that time. It may be gravely questioned from the decision of the Circuit Court of Appeals in the Breese Case, supra, in which this question was passed upon, whether the ruling was not restricted to taxes regularly "assessed" against a citizen who afterwards becomes a juror. The court referred many times in the opinion to "taxes assessed," and there is to my mind much force in the argument of the District Attorney that it was the intention of the court to restrict the ruling to jurors against whom taxes had been listed or assessed. Be this as it may. I am thoroughly satisfied that the juror Blackburn was not liable for any taxes for the year 1896. Under the statute of North Carolina (Revisal 1905, vol. 2, § 5223) he was entitled to an exemption on $25 worth of personalty, and evidence has been submitted as to what property he really had during the year 1896.

In 1890 Blackburn and his wife, Nancy C. Blackburn, conveyed to Mrs. Blackburn's son, and Blackburn's stepson, Charles W. Brinkley, a piece of real estate in Forsyth county, containing 70 acres, more or less. Cotemporaneously therewith Brinkley executed a bond in which he agreed to "take good care of the said N. W. Blackburn and his wife, Nancy C. Blackburn, during their natural lives, and furnish them with good food and clothing, and all that is necessary for their comfort and pay all medical expenses necessary, and at their death to furnish them a decent burial, and all other matters necessary for their comfort." The evidence shows that after this Blackburn and his wife continued to live on the place conveyed to Brinkley in their old home, and Brinkley built a new house. In 1894 Mrs. Blackburn died. The evidence also shows that prior to her death they had disposed of a cow and horse and certain farming utensils, and it is satisfactorily shown that, when she died, all they had was their very simple household furniture.

Affidavits have been introduced from several witnesses to the effect that Blackburn had on June 1, 1896, $200 worth of personalty. No details are given in these affidavits, and they are in almost the same language, and certainly the same handwriting. Attributing no bad motive or wrong to any one, it is still true that these affidavits are entitled to little probative value. However honest they may have been in their statements, the contents of the affidavits are too general to be given any great weight. One of the affiants, J. T. Boyer, was put on the stand by the District Attorney, and modified very much the statement made in his affidavit.

The most valuable witness in this matter was J. H. Tesh, who was introduced by the government. He was a man of mature years who lived near Blackburn, and he testified that after his wife died Blackburn began to sell off his things. He further testified that Blackburn lived in a simple log house with a back room, and the substance of his testimony is that there were only a very few cheap articles in the house. He said, when they had a sale of Blackburn's things after his death, they did not bring more than $15 or $20. It was claimed that Blackburn had some feather beds of considerable value, but this witness says that at the sale one of

them sold for 50 cents. The following brief extract from the testimony will show the substance of what this witness said:

"Q. What was the value of the stuff this old man had after the cow and horse and wagon were sold? A. He had his household and kitchen furniture.

"Q. He retained that after he made the trade with Brinkley? A. Yes, sir; after his wife died he began to sell that off.

"Q. What did he have—do you know? A. He had some beds and tables, and something like that—all old property.

"Q. Would you estimate it at over $25? A. No, sir; not what I saw after he sold his horse and wagon and cow."

I am thoroughly satisfied from the evidence that this juror, N. W. Blackburn, was not liable for taxes for the year 1896, as he had not more than $25 personal property, and this was exempt from taxation.

It is further urged that under the act in force at the time this grand jury was drawn, which has been quoted above, jurors could only be selected from the tax returns for the preceding year, and that consequently whether a man was liable for taxes or not, if he was not on the tax returns, he would not be a competent juror. I do not think the Circuit Court of Appeals would have decided this, nor does the opinion on the subject of tax returns indicate this. The court in this opinion says:

"The statute in question requires the clerks of the boards of county commissioners to lay before them 'the tax returns for the preceding year.' So far as we have been enabled to discover, there is no statute requiring the tax collectors to make a 'tax return' showing the names of the taxpayers. Where the tax collector desires credit for taxes assessed against insolvents, he must return a list of such insolvents. But we have found no provision requiring a return of a list of citizens who have paid all or a part of the taxes assessed against them. In practice, as we are led to believe, the statute in question is in great measure disregarded by the boards of county commissioners," etc.

I do not believe that the Court of Appeals would have held on this question that a citizen who was an intelligent man and of good moral character, because he was poor and did not own more than $25 worth of property, could not be a competent juror. It seems entirely probable, however, that Blackburn's name was obtained as a juror from a former tax list. Blackburn died in 1902, and his testimony cannot be had. The evidence obtainable fails to satisfy me of Blackburn's disqualification as a grand juror, but, on the contrary, satisfies me that he was competent. As I reach the conclusion that the grand juror Blackburn was not disqualified even under the law as it stood at the time the indictment was returned, it is unnecessary to consider the effect of the act of the Legislature of North Carolina of 1907 (Pub. Laws N. C. 1907, p. 63, c. 36), providing that motions to quash for the cause suggested here should not be sustained, or its applicability to the present motion.

The motion to quash the indictment on the ground that Blackburn was not a qualified juror must be overruled and denied; and it will be so ordered.