UNITED STATES v. BREESE et al.

(District Court, W. D. North Carolina, Asheville Division.   June 29, 1909.)

1. COURTS (§ 352*)—FEDERAL COURTS—MANNER OF DRAWING.
   Under Rev. St. § 800 (U. S. Comp. St. 1901, p. 623), providing that jurors in the federal courts shall be drawn or selected in accordance with the practice in the state courts as nearly as practicable, and section 810 (U. S. Comp. St. 1901, p. 627), providing when grand juries shall be summoned in such courts, construed together, a venire of jurors may be drawn and summoned for a term without designating them as grand or petit jurors, and at the term a grand jury may be selected therefrom, where such is the state practice.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 928, 929; Dec. Dig. § 352.*]

2. INDICTMENT AND INFORMATION (§ 196*)—RETURN—WAIVER OF OBJECTIONS.
   Where the record in a criminal case shows that the indictment was properly indorsed "a true bill" by the foreman of the grand jury, and was filed by the clerk on the same day, and a motion to quash, subsequently made and overruled, recited that the indictment was found a true bill and returned into open court, the defendants cannot after the lapse of 12 years attack the indictment on extrinsic evidence to show that it was not returned in open court.
   [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 631; Dec. Dig. § 196.*]

3. INDICTMENT AND INFORMATION (§ 11*)—RETURN INTO COURT—NECESSITY OF PRESENCE OF GRAND JURORS.
   Where it is conceded that an indictment was found by a vote of the requisite number of grand jurors, and, after being properly indorsed as a true bill by the foreman, was taken by him into the courtroom, which opened from the grand jury room, and presented to the judge on the bench, when the court was in session, and by him handed to the clerk, such indictment is not invalidated by the fact that the other grand jurors did not accompany the foreman into the courtroom.
   [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 62; Dec. Dig. § 11.*]

On Motion to Quash Indictment.
See, also, 172 Fed. 761.

A. E. Holton, Dist. Atty., for the United States.
Moore & Rollins, Adams & Adams, and Locke Craig, for defendants.

NEWMAN, District Judge.   The indictment in this case appears on its face to have been found "a true bill" by the endorsement thereon at Greensboro, at the October term; that is, on October 6, 1897. On October 7, 1897, an order was made by Judge Purnell, presiding, transferring the case to Asheville for trial.   In the United States District Court at Asheville on November 6, 1897, in connection with the plea of not guilty by the defendants in this case and other cases against them, an order was entered as follows:

"In the above-entitled action it is ordered by the court that the defendant, being now arraigned, be and he is now required to enter his plea to the indictment in said cause and he does so plead not guilty thereto, but such plea shall not operate or have the effect to prevent his taking advantage upon mo-

tion in arrest of judgment or on a motion for a new trial of all matters and things which should be taken advantage of by motion to quash or demurrer. Upon motion in arrest of judgment or for a new trial, all such matters and things shall be heard and determined as if the same were being heard upon motion to quash or demurrer. This order shall apply to any and all other indictments pending in this court against the defendant.

"Robert P. Dick, U. S. Judge.
"Concurred in. Covington, Asst. U. S. Attorney."

I have heretofore determined that matters proper to be heard by demurrer or motion to quash might be heard under this order as well in advance of trial as afterwards on motion in arrest of judgment or for a new trial. No action whatever has been taken in the case since the plea and order referred to, except that at an adjourned term of the District Court, at Asheville in July, 1908, the defendants filed a plea, or motion as it is termed on the paper, sworn to by all of the defendants, to quash the indictment on the ground that certain members of the grand jury which found the bill of indictment had not paid their state and county taxes for the year 1896, as required by the statutes of North Carolina. In a motion as filed it was urged that three, James Davis, Jr., A. R. Couch, and N. W. Blackburn, members of the grand jury finding this bill of indictment, had failed to pay their taxes for the preceding year. The motion was abandoned before the hearing as to James Davis, Jr., and abandoned on the hearing as to Couch, and was only urged in the end as to Blackburn. After hearing the evidence on this matter, the court overruled and denied the motion to quash the indictment, finding that Blackburn, the juror whose disqualification was insisted upon, did not owe any taxes for the year 1896.

The case being now called for trial, what is denominated a "plea and motion" is interposed, sworn to by each of the defendants, which makes two questions: First. That the grand jury that found this bill at Greensboro was not properly drawn and impaneled; and, second, that the bill of indictment was not properly returned into court.

As to the first question, it appears from the records that at the April term, 1897, of the United States District Court for this district, at Greensboro, an order was entered on the minutes of the court, as follows:

"Ordered by the court that the jury commissioner, John J. Nelson, and the clerk of this court, S. L. Trogdon, draw a jury for the October term, 1897, of this court."

At the opening of the October term of the District Court at Greensboro on October 5, 1897, there appears the following:

"James F. Millikan, U. S. marshal, returns into court the following venire, duly executed."

Then follows the venire, signed by the clerk, with 54 names appended, and then this entry:

"Executed August 26th, 1897, by summoning each person named to appear at 10 o'clock October 5th, 1897, answer as juror and not depart the court at Greensboro, N. C."

There then appears on the minutes of the court the following:

"Ordered by the court that the clerk draw a grand jury of twenty-one. The following were drawn and sworn."

Then follows 19 names. Why the 21 were not sworn does not appear, but presumably because they were excused from service or failed to appear. Then follows the appointment of James M. Allen, as foreman of the grand jury, by the court. The minutes for the same day show that Hon. Thomas R. Purnell, judge of the Eastern district of North Carolina, had been designated by Judge Simonton, circuit judge, to hold the court on account of the sickness of Judge Dick, the then judge of this district.

The contention of the defendants is that this grand jury was not drawn conformably to the requirements of the statutes of the United States on the subject. The practice in the United States courts in this district seems to be for two commissioners provided for by the United States statute to draw from the box containing the names of qualified jurors at the term at which they are to serve, 54 names to appear and serve as jurors, without any distinction being made at the time between grand and traverse jurors. When the court meets, by direction of the court, the clerk causes the names of these 54 jurors, on slips of paper, to be placed in a hat, and has a child, under 10 years of age, to draw therefrom a sufficient number of names to constitute the grand jury for the term (it appears in this district usually 21 names), and they are sworn and impaneled as grand jurors. This practice conforms substantially with the state practice of the state of North Carolina. This practice is shown in the Revisal of 1905 of the laws of North Carolina. Section 1958 is as follows:

"The commissioners at their regular meeting on the first Monday in July in the year nineteen hundred and five, and every two years thereafter, shall cause the names on their jury list to be copied on small scrolls of paper of equal size and put into a box procured for that purpose, which must have two divisions marked No. 1 and No. 2, respectively, and two locks, the key of one to be kept by the sheriff of the county, and the other by the chairman of the board of commissioners, and the box by the clerk of the board."

Section 1959, omitting some immaterial things, is as follows:

"At least twenty days before each regular or special term of the superior court, the board of commissioners of ne county shall cause to be drawn from the jury box out of the partition marked No. 1, by a child not more than ten years of age, thirty-six scrolls, * * * except when the term of the court is for the trial of civil cases exclusively, when they need not draw more than twenty-four scrolls, and the persons whose names are inscribed on said scrolls shall serve as jurors at the term of the superior court to be held for the county ensuing such drawing, and for which they are drawn, and the scrolls so drawn to make the jury shall be put into the partition marked No. 2. The said commissioners, shall, at the same time and in the same manner, draw the names of eighteen persons who shall be summoned to appear and serve during the second week, * * * and a like number for each succeeding week of the term of said court, unless the judge thereof shall sooner discharge all jurors from further service. * * * The said commissioners may, at the same time, and in the same manner, draw the names of eighteen other persons, who shall serve as petit jurors for the week for which they are drawn and summoned."

The manner in which grand juries are then obtained is shown by section 1969 of the Revisal 1905, as follows:

"The judges of the superior court, at the terms of their courts, except those terms which are for the trial of civil cases exclusively, and special terms for which no grand jury has been ordered, shall direct the names of all persons

returned as jurors to be written on scrolls of paper and put into a box or hat and drawn out by a child under ten years of age; whereof the first eighteen shall be a grand jury for the court; and the residue shall serve as petit jurors for the court."

While the practice in the United States courts here does not appear to follow with exactness that provided by the statutes for the state courts, it is substantially and in effect the same.

Section 800 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 623) is as follows:

"Jurors to serve in the courts of the United States, in each state respectively, shall have the same qualifications, subject to the provisions hereinafter contained, and be entitled to the same exemptions, as jurors of the highest court of law in such state may have and be entitled to at the time when such jurors for service in the courts of the United States are summoned; and they shall be designated by ballot, lot, or otherwise, according to the mode of forming such juries then practiced in such state court, so far as such mode may be practicable by the courts of the United States or the officers thereof. And for this purpose the said courts may, by rule or order, conform the designation and impaneling of juries, in substance, to the laws and usages relating to jurors·in the state courts, from time to time in force in such state."

As we perceive from this section, the jurors to serve in the courts of the United States are to be designated by ballot, lot, or otherwise, according to the mode of forming such juries practiced, when they are drawn, in the state court "so far as such mode may be practicable by the courts of the United States or the officers thereof." As I have stated, the method adopted by the United States courts here seems to be in substantial conformity with the practice in the superior courts of North Carolina, and doubtless as nearly so as the presiding judges have deemed practicable.

Counsel here, however, rely on section 810 of the Revised Statutes (U. S. Comp. St. 1901, p. 627), which is as follows:

"No grand jury shall be summoned to attend any Circuit or District Court unless one of the judges of such circuit or the judge of such district, in his own discretion, or upon a notification from the district attorney that such jury will be needed, orders a venire to issue therefor. And each of the said courts may in turn order a grand jury to be summoned at such time, and to serve such time as it may direct, whenever, in its judgment it may be proper to do so. * * *"

The evident purpose of this statute was to prevent the unnecessary attendance of a grand jury and the expense and trouble of the same, at a term when there was no need for a grand jury and no business to be brought before it. If a grand jury is deemed unnecessary before the court meets, and afterward it is found that a grand jury is needed, the court may by order in term direct that they be summoned.

It is urged by counsel here that the meaning of this section 810 is that a grand jury by name must be ordered by the judge of the Circuit or·District Court, and that the practice appearing to have existed in the court at Greensboro in this instance does not conform to this meaning. It is the duty of the court, of course, to consider this section in connection with section 800, which provides for conformity with the state practice as nearly as may be practicable.

Taking the two sections together, was this or not a legal grand jury? By an order of the court, at the April term, 1897, a jury was

drawn by the commissioner and the clerk and a venire issued therefor by the clerk. The marshal returned the same at the October term with the names of the jurors attached, and from that it appears the grand jury was drawn by order of the court. What difference is there in practical effect between that practice and drawing from the box, as is done in some districts, a grand jury by name, and a traverse jury by name, a separate venire issuing for each? The only difference appears to be that in the one instance the jurors themselves know, and those interested by examining the records would know, the persons who are to serve as grand jurors and those who are to serve as traverse jurors; whereas, in the other instance, under the practice here, no one would know, not even the jurors themselves, until the drawing took place in open court, in what capacity they were to serve during the term. The latter practice in some respects at least would appear to be preferable. Certainly no wrong is done by this to persons against whom indictments are to be preferred. I do not find anything wrong whatever in the manner in which this grand jury was drawn, summoned, and impaneled.

The next ground of the motion is that this bill of indictment was not properly returned into court, and this motion is based largely on the recent decisions of the Circuit Court of Appeals for this circuit in the two cases of Renigar v. United States, 172 Fed. 646, and Angle v. United States, 172 Fed. 658.

In the Renigar Case, which is not yet reported, the facts appear from the opinion of Judge Brawley as follows:

"On the 17th day of March, 1908, in the trial of case of the United States v. Pinkney Ayers, the evidence was concluded on the afternoon of said March 17th, and court was adjourned until 10 o'clock a. m., March 18, 1908. On March 18th, the judge of this court, in his office beneath the courtroom in the Federal Building in the city of Lynchburg, by appointment met counsel for government and for said Pinkney Ayers at or about 9 o'clock a. m., and the said judge and counsel were engaged in the consideration of the instructions in the case of the United States v. Pinkney Ayers until about 2:30 o'clock p. m., with the exception of about one hour, during which they were separated and were at lunch. While the judge and counsel were so engaged in the office of the judge beneath the courtroom, the paper herein, purporting to be an indictment, was by the foreman of the grand jury, who came alone into the courtroom, handed to the clerk at his desk in said courtroom, and by him marked 'Filed' about 12 o'clock noon, while the judge and counsel for Pinkney Ayers, who were also of the counsel for the defendant in this case, were engaged in the judge's chambers; the judge of this court never having, at that time, been in the courtroom at any time during that day, and did not make his appearance in the courtroom until about 2:30 o'clock p. m., an hour or more after the said filing of the said alleged indictment, since which appearance of the judge in the courtroom no proceedings have been had upon the said indictment, except such as appear of record herein.

"Counsel for defendant moved the court to correct its order above set forth, and to make the same conform to the state of facts herein set out, and at the same time stated to the court the fact that the indictment had been handed to the clerk and marked 'Filed' in the absence of the judge from the courtroom was known to counsel for the defendant on the 18th day of March, 1908, at 1:30 o'clock p. m., and before pleading in abatement or in bar of the said alleged indictment; the court stating that the jury, clerk, marshal, and other officers of the court did meet in the courtroom at 10 o'clock a. m. on the 18th day of March, and were simply awaiting the return of the judge until he could finish the consideration of the instructions, which for convenience was

being done in the judge's chambers, on the floor below, also that the court has at a previous term given instructions to the clerk and to the assistant district attorney that no further announcement should be made of an indictment found by the grand jury, and that the same, after endorsement should be brought by the foreman and handed to the clerk, who would thereupon mark the same 'Filed,' and proceed to make the regular order of entry; the reason for such instructions being that frequently parties who were indicted learned of the facts through the public announcement thereof in the courtroom before capiases for their arrest could be served, thus leading to difficulties in making arrests and to flights. But the court certifies that the defendant, W. H. Renigar, was in attendance upon this court on a bond not to depart without leave of the court, and that nothing contained in the direction hereinbefore referred to in any manner applied to this particular case."

In the District Court a motion to quash the indictment upon the ground that it was not properly returned to the court was overruled, and the case was reversed by the Circuit Court of Appeals on the ground that the court erred in this.

Judge Brawley closes an able opinion in this case in this language:

"We have been extremely reluctant to set aside the judgment in this case upon the ground which may appear technical, and for that reason have given unusual time to its consideration, and to an investigation of the practice in every state, where the institution of the grand jury is preserved. Nothing is more clear than that the 'established mode of procedure' is for the grand jury to make its presentments publicly in open court; all of the grand jurors being present and answering to their names. It follows that a paper purporting to be an indictment handed by the foreman to the clerk when the court is not in session and in the absence of the grand jury is no indictment. This is not a question of irregularity, but of substantive law, based upon the direct terms of the constitutional guaranty that no man shall be 'held to answer' for an infamous offense except on an indictment by a grand jury. The indictment—and that means, of course, a valid indictment found and presented according to the settled usages and established mode of procedure—is a prerequisite to the jurisdiction of the court to try the person accused, an indispensable condition and requirement, the absence of which rendered the proceeding not simply voidable, but absolutely void."

It will be seen from the facts of this case that the indictment was returned by the foreman of the grand jury to the clerk when the judge was not even in the courtroom, although in another part of the building, and when the court was not in session; that is, the judge was not on the bench.

In the Angle Case the bill of exceptions contained in the transcript of the record, which I have before me, shows the facts in that case to have been as follows:

"The said indictment, after being found by the grand jury, was not returned and never has been returned by the grand jury, as the law requires, to the court in open court, but was returned by the foreman of the grand jury, the other jurors not being present, to and delivered by the foreman of the grand jury, to the clerk of the court, during the session of the court, but in the absence of the other jurors, and without the attention of the court being called thereto."

The questions arising for determination on this motion are probably three, as follows: (1) Can defendants go behind the record of the court? (2) Is the motion made in time, and can it now be entertained, particularly in view of what transpired in 1908 on motion to quash? (3) Even if defendants are allowed to go behind the record of the court and introduce what they propose to show, would this showing

be sufficient to justify the court at this late date in quashing the bill of indictment?

It is well understood, of course, that the records of a court of record import usually and generally absolute verity. In the present case the record of the court shows the following: On the clerk's "New Bill Docket" for October term, 1897, appears the following:

"No. 24 and No. 3220. United States vs. William E. Breese, William H. Penland, and J. E. Dickerson."

Then opposite to that:

"Indictment for conspiracy and embezzlement at Octo. Term 1897. Indorsed: 'A True Bill. J. M. Allen, Foreman.' Transferred to Asheville."

And then in pencil what appears to be a memorandum of the clerk with reference to his letter on his official letter book transferring the case to Asheville. On the District Court Criminal Docket, the following:

"United States v. Wm. E. Breese, Wm. H. Penland, J. E. Dickerson, Buncombe Co., No. 3220. Indictment: Conspiracy and Embezzlement. Octo. Term, 1897. 'A True Bill. J. M. Allen, Foreman.'"

On the records appears an order transferring the case to Asheville, which, it is conceded, was recently entered, having theretofore appeared only on the official letter book, and by the original order itself, made by Judge Purnell October 7, 1897, transferring the case, which has been presented as a part of the record in the case. The original indictment in this case which is before the court as a part of the record has indorsed on it the term of the court, the case, and the offense, and an entry "A True Bill, J. M. Allen, Foreman," and "Filed October 6th, 1897, S. L. Trogdon, Clerk." That is the record in the case, which shows undoubtedly that a bill of indictment against the defendants for the offense charged was signed "A True Bill" by the foreman of the grand jury according to the proper practice in this respect. It shows that the indictment got into court, and was there entered on the clerk's "New Bill Docket" and on the "Criminal Trial Docket" on the same day that the foreman indorsed "A True Bill" on it.

Can the court go behind this record, and hear extrinsic evidence to add to or to take from or explain it? This may be gravely questioned. Assuming, however, that under the decisions of the Circuit Court of Appeals for this circuit in the two cases referred to, the question may be heard if raised during the term and in ample time; should the defendants here, after nearly 12 years have elapsed, and in view of all that transpired in the motion made by them and the proceedings thereon last year, be now heard? Many terms of court have elapsed, and this bill of indictment has been in the clerk's office all the time unquestioned until more than 10 years had passed, when in July of last year the defendants filed the motion referred to, to quash the indictment upon the ground that certain grand jurors had not paid taxes as required by law. In that motion, which was sworn to by all of the defendants, is repeated three times this language with reference to the three grand jurors—that:

He "was summoned, drawn, sworn, and charged as one of the said grand jury and constituted a part of the body of said grand jury, and as such took

an active part in the deliberations of said grand jury upon said bill of indictment and concurred with his fellow grand jurors in finding the same a true bill and * * * at the time he was summoned, drawn, sworn, and charged as such grand juror as aforesaid, and at the time * * * constituted a part of the body of said grand jury as aforesaid, and * * * took an active part in the deliberations of said grand jury upon the said bill of indictment, and concurred with his fellow grand jurors in finding the same a true bill, as aforesaid, and at the time the said grand jury returned the said bill of indictment into open court, as aforesaid."

Then the following:

"Which was the year preceding that in which the state and county taxes of the state of North Carolina (county of Guilford in two places, and county of Suffolk in one) at the time their said bill of indictment was returned into open court, as aforesaid, then been last appraised and assessed," etc.

So that, in this verified motion, it is in terms acknowledged that this bill of indictment was found "a true bill" by the grand jury and returned "in open court." That motion was made and urged without the slightest suggestion of any other objection to the formation of the grand jury or to the return of the bill of indictment. The motion, in effect, acknowledged that, if the members of the grand jury were all qualified by reason of the payment of taxes for the year preceding their service as grand jurors, the bill of indictment was properly found and properly returned into the court. The defendants knew, or ought to have known, as well when this indictment was returned as they know now, how the same was returned into court, yet they waited all these years to raise the question. I am very much inclined to think that the objection comes too late, and I am satisfied, in view of what occurred last July, and what was conceded by the defendants, under oath, in the motion then made, that they are not entitled to be heard to make this objection to the manner in which the indictment was brought into court.

I am not overlooking the contention of counsel so ably presented, to the effect that no action has been taken by the government in the way of pressing to trial this bill of indictment, and that the defendants by the express order of Judge Dick of November, 1897, had reserved to them the right to interpose objections by demurrer or motion to quash, and, even after verdict, by a motion in arrest or for a new trial, and that consequently it was not incumbent upon them to do anything until the government moved in the matter. This view was strongly presented, and I was greatly impressed with it, and I am not prepared to say certainly what the result would be on this branch of the case but for the admissions of the defendants in their verified motion made last summer to the effect that the indictment was correctly returned into court.

But even if I am wrong in the foregoing, and it would be proper for the court to hear the defendants' evidence upon motion to quash or for the purpose of amending and correcting the record, as they desire, I do not believe that the evidence they propose to submit would change the result. By consent of the district attorney and counsel for the defendants, in order to allow certain witnesses in attendance upon the court to return to their homes, a statement of facts was agreed upon as to what occurred at the time, in connection with the action of the grand jury on

this bill of indictment and its return to the court. It appears from that statement that the grand jury found a true bill; that it was marked "a true bill" on the back and signed by J. M. Allen as foreman; that the requisite number of grand jurors more than 12, voted to find a true bill; that, when this action had been taken, the grand jury was in session in a room adjoining the courtroom, on the same floor, with a door opening into the courtroom; that the foreman left the grand jury, went into the courtroom with the bill of indictment, and handed it to Judge Purrell, the presiding judge, in person, the judge being then on the bench and the court open; and that the judge looked over the indictment and handed it to the clerk in open court, and that the foreman then returned to the grand jury room and proceeded with business; that the grand jury did not accompany him when he brought the bill of indictment into the courtroom and handed it to the court. It would appear, therefore, that the facts in this case are materially and essentially different from those in the case of either Renigar or Angle. In the former case the indictment was handed to the clerk when the judge was not in the courtroom and the court was not in session, and in the latter case to the clerk without the attention of the court being called to it. Surely the facts are sufficient to distinguish this case entirely from the two cases referred to.

But, more than this, the same evidence which would show that the grand jury did not accompany the foreman into the courtroom would show, and does show, that the grand jury voted for and directed the return of a true bill. That evidence of the fact that the grand jury voted for and found a true bill by the requisite number may be given by the foreman or any member of the grand jury in another matter is conceded by the eminent counsel for the defendants; indeed, this view of the law was urged by them upon another branch of the case; so that, if we should go into the evidence in this matter, the reason given in the Renigar Case and in the cases therein cited for holding that it is best that a bill of indictment should be brought into court by the entire body of the grand jury—that is, that otherwise there would be no certainty that the foreman returned the correct action of the grand jury—would not apply in this case, because the evidence which would show that the foreman's action might have been wrong would at the same time show clearly that it was right. Of course, the decision of the Circuit Court of Appeals for this circuit is controlling on the court here—absolutely so. I have stated the facts of the cases recently decided by that court. While some of the language used by the eminent and learned judge delivering the opinion in the Renigar Case may indicate that it is necessary to the validity of a bill of indictment that it be returned into open court by the grand jury in a body, yet I think the decision should be considered somewhat at least in connection with the facts of the case in which the decision was made and the opinion handed down. I do not believe that the Circuit Court of Appeals has held or will ever hold that in a case where the facts are like the facts here the indictment should be quashed. I do not understand the Circuit Court of Appeals in either of these cases to hold that the defendants may not admit that the bill of indictment was properly

returned into court. Nor do I understand that they have held that if the evidence which shows that the foreman alone brought the bill into court, unaccompanied by the body of the grand jury, at the same time shows that the bill of indictment had been regularly found true by the grand jury, and that the foreman was authorized to make such return, the indictment would be held invalid. There is a statute in North Carolina, and has been since 1889, which authorizes the foreman of grand juries to return a bill of indictment into court except in capital cases. The statute now appears in section 3242 of the North Carolina Revisal of 1905. It is as follows:

"Grand juries shall return all bills of indictment in open court through their acting foreman, except in capital felonies, when it shall be necessary for the entire grand jury, or a majority of them, to return their bills of indictment in open court in a body."

While I do not say that this is controlling as to the practice to be followed in the United States courts in this state, it does show, at least, that the Legislature of this state, of which the defendants are citizens, believe that foremen of grand juries, always selected for their high character as well as for their intelligence, may be trusted, especially in view of the solemn oath they take, to report correctly to the court the action of the grand jury, and that in cases of felony except capital cases (as to which it was thought there should be greater formality) no harm would result to the defendants from this practice.

It may be properly added that I recognize to the fullest extent the right of the defendants under the Constitution of the United States (article 5), when charged with an infamous crime, to have an indictment of the grand jury, and agree, of course, with all that was said and strongly pressed in the able argument by the defendants' counsel as to its absolute necessity; and, if I did not believe that the bill of indictment was properly and regularly found by the grand jury in this case, I would so hold. Nothing is specified in the Constitution, however, as to the manner of getting the indictment into court. Whatever is necessary as to that is at most a safeguard thrown by the courts around the proceeding and intended to prevent any imposition or wrong. In this case the facts not only fail to show that any imposition or wrong has resulted, but show affirmatively that there has been nothing of the kind in the case.

I conclude, therefore, that it is doubtful, at least, whether the defendants have a right to go behind the records of the court at all, and that by the lapse of time and by what was set up in their motion to quash the indictment in 1908 they have certainly lost this right, if they ever had it; and, further, if there be a mistake about this, and the evidence that they propose to submit should be heard by the court, it would not show such facts as would justify the court in quashing this indictment. Counsel have frequently alluded on the argument of this motion to the trial of these defendants on other indictments and to the results of these different trials. Nothing of that sort is proper to be considered on the present hearing. The question here is whether the motion to quash this indictment should be allowed or denied. I know

nothing whatever about the merits of the case. I do know this, however, that the defendants stand before the court with the presumption of innocence in their favor, and that this presumption will go with them in the trial and remain with them until the government by competent evidence shall establish, to the satisfaction of a jury, and beyond a reasonable doubt, every ingredient necessary to their conviction under this indictment. To this view of their case they are entitled, and this they have. I do not believe under the whole record presented here, or even under such evidence as counsel say they would submit, a case is made which justifies the court in quashing this bill of indictment, and consequently an order will be made overruling and denying the motion upon both grounds stated therein.

I have discussed this question at some length, perhaps at an unnecessary length, but I have done so in deference to the earnestness and evident sincerity of counsel for defendants in pressing this motion, and also that my views may fully appear upon the record. The case has received the most careful investigation and consideration, and the result of this is the conclusion reached above.