BREESE et al. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1913.)

No. 973.

1. GRAND JURY (§ 5*)—JURORS—QUALIFICATIONS—TAXPAYERS.
    Code N. C. § 1722, provides that the commissioners for the several counties, at their regular meeting on the first Monday of June in each year, shall cause their clerks to lay before them the tax returns for the preceding year for their county, from which the commissioners shall select the names of such persons only as have paid tax for the preceding year and are of good moral character and of sufficient intelligence to act as jurors. *Held,* that the absence from the list of taxpayers of the name of a grand juror, and the consequent nonpayment of taxes, did not, of itself, disqualify the juror, if it did not appear that his name should have been on the list.
    [Ed. Note.—For other cases, see Grand Jury; Cent. Dig. §§ 8–13, 15; Dec. Dig. § 5.*]

**2.** GRAND JURY (§ 5*)—QUALIFICATION OF JURORS—TAXPAYER—EVIDENCE—FINDINGS.

On an issue as to whether the name of a grand juror should have been on the tax list, evidence *held* to warrant a finding that he had no property subject to taxation in the preceding year.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 8–13, 15; Dec. Dig. § 5.*]

**3.** CRIMINAL LAW (§ 1158*)—APPEAL—FINDINGS—REVIEW.

A finding of fact by the trial judge will not be reversed on appeal, unless it is plainly wrong.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3061–3066, 3070, 3071, 3074; Dec. Dig. § 1158.*]

**4.** INDICTMENT AND INFORMATION (§ 10*)—DRAWING GRAND JURY—VENIRE FACIAS—ISSUANCE.

Rev. St. § 810 (U. S. Comp. St. 1901. p. 627), providing that no grand jury shall be summoned unless the judge orders a venire to issue therefor, was intended only to prevent the expense of having a grand jury unnecessarily summoned; and hence, where an order is entered requiring the clerk and jury commissioner to draw jurors for service at the succeeding term, an indictment found by a grand jury at such succeeding term was not defective because there was no order of the court in terms directing that a writ of venire facias issue therefor.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 50–61; Dec. Dig. § 10.*]

**5.** INDICTMENT AND INFORMATION (§ 11*)—RETURN—ENTRY.

An entry of the return of an indictment properly entitled, and reciting that an indictment for conspiracy to embezzle was returned at the October, 1897, term, and indorsed "A true bill," with the name of the foreman of the grand jury, and that the cause was ordered transferred to another city, to be tried at the next term of court to be held on the first Monday of November next, etc., while incomplete and informal, the defect was one of form only, and the indictment was therefore not fatally defective on the ground that no record entry was made of its return.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 62–75; Dec. Dig. § 11.*]

**6.** CRIMINAL LAW (§ 673*)—EVIDENCE—OTHER OFFENSES—LIMITATION—REQUEST.

Where alleged evidence of an offense other than that charged in the indictment in part related directly to and tended to support the offense charged, defendants were, at most, entitled to the granting of an instruction, if requested, limiting the effect of the evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1597, 1872–1876; Dec. Dig. § 673.*]

**7.** CRIMINAL LAW (§ 371*)—EVIDENCE—OTHER OFFENSES—INTENT.

In a prosecution of defendants for conspiracy to embezzle and misapply the funds and credits of a national bank, evidence that defendant D., who was treasurer of a church, procured two notes; for $5,000 each, of a series representing a loan secured by a deed of trust (which in fact had not been made), and after placing the notes in the possession of the bank used them as collateral for a discount for the benefit of the bank, was admissible to show fraudulent intent, though it was separate and apart from the offense charged in the indictment.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 830–832; Dec. Dig. § 371.*]

**8.** CRIMINAL LAW (§ 150*)—LIMITATIONS—OVERT ACTS—CONSPIRACY.

Where a conspiracy was formed to embezzle and misapply the funds and credits of a national bank more than three years prior to the in-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dictment, but the offense charged involved overt acts committed within the three-year period, the offense was not barred by limitations.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 274, 275; Dec. Dig. § 150.*]

9. CONSPIRACY (§ 43*)—PERSONS LIABLE—CONVICTION OF LESS THAN ALL.

Where three persons were charged with conspiracy to embezzle and misapply the funds and credits of a national bank, and the proof was sufficient to convict two of them, but not the third, the charge against him would be treated as surplusage, and the conviction of the others sustained.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79-99; Dec. Dig. § 43.*]

In Error to the District Court of the United States for the Western District of North Carolina, at Asheville; William T. Newman, Judge.

William E. Breese and another were convicted of conspiracy to embezzle and misapply the funds and credits of the First National Bank of Asheville, N. C., and they bring error. Affirmed.

See, also, 172 Fed. 761; 173 Fed. 402; 192 Fed. 1022.

Chas. A. Moore, John S. Adams, Thos. S. Rollins, and Locke Craig, all of Asheville, N. C. (Moore & Rollins and Adams & Adams, all of Asheville, N. C., on the brief), for plaintiffs in error.

A. E. Holton, U. S. Atty., of Winston-Salem, N. C. (A. L. Coble, Asst. U. S. Atty., of Statesville, N. C., on the brief), for the United States.

Before GOFF, Circuit Judge, and McDOWELL and ROSE, District Judges.

McDOWELL, District Judge. On October 5, 1897, an indictment was found charging Wm. E. Breese, Joseph E. Dickerson, and Wm. H. Penland (who was not tried) with conspiracy to embezzle, abstract, and willfully misapply the funds and credits of the First National Bank of Asheville, N. C. Sections 5209 and 5440, Rev. Stats. U. S. (U. S. Comp. St. 1901, pp. 3497, 3676). Having saved to themselves by force of an agreed order the right to plead not guilty, without thereby waiving the right to subsequently raise objections to the indictment, the defendants on the date last mentioned pleaded not guilty. Nothing having been done in the interval, the three defendants on May 28, 1908, filed a verified motion to quash the indictment on the ground that some of the grand jurors were not qualified. Subsequently this motion was abandoned, except as to one grand juror—N. W. Blackburn. This motion was overruled, and at the next calling of the case, on June 21, 1909, the defendants filed another motion to quash the indictment, which was also overruled. The result of the trial was a verdict of guilty as to Breese and Dickerson, and judgment in accordance with the verdict. For the opinion of the trial court, see U. S. v. Breese et al. (D. C.) 172 Fed. 761; Id., 172 Fed. 765. So far as seems necessary, the numerous assignments of error will be discussed, but not necessarily in the order in which they were presented.

[1] We shall first consider the objection to the qualification of the grand juror Blackburn. The ground of objection to Blackburn was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

that although, as is alleged, he owned over $200 worth of property in 1896, he was not assessed for taxes for that year, his name was not on the list of taxpayers, and he had not paid any taxes for the year 1896. The North Carolina statute in force at that time reads:

"The commissioners for the several counties, at their regular meeting on the first Monday of June, in each year, shall cause their clerks to lay before them the tax returns for the preceding year for their county, from which they shall proceed to select the names of such persons only as have paid tax for the preceding year and are of good moral character and of sufficient intelligence." Section 1722, Code of N. C.

In Breese v. U. S., 143 Fed. 250, 74 C. C. A. 388, this court was called upon to construe this statute only in respect to the failure of a grand juror to pay a part of the taxes actually assessed against him. The question now presented is quite different. State v. Perry, 122 N. C. 1018, 1022, 29 S. E. 384 is, we think, conclusive on the proposition that the absence from the list of taxpayers of the name of a grand juror (and the consequent nonpayment of taxes) does not of itself disqualify such juror, if it does not appear that his name should have been on the list.

[2] Recognizing the force of the government's contention that mere poverty does not disqualify, the defendants attempted, on the hearing of their motion to quash, to prove that Blackburn owned over $200 worth of property in 1896 and that he should have been on the assessment list. The evidence submitted on behalf of the defendant consisted almost entirely of ex parte affidavits, which were all in the handwriting of one of the defendants. In opposition to these affidavits, the government introduced several witnesses who testified viva voce. J. T. Boyer, one of the persons who had made an affidavit relied upon by the defendants, was introduced as a witness by the government. By him it was shown that he had never verified his so-called affidavit, and that the only statement in the paper of any moment was concerning a matter of which he had no personal knowledge. From the testimony of J. H. Tesh, introduced by the government, it appeared that Blackburn disposed of his cow, wagon, and horse in 1890, or shortly thereafter, and that he retained only a small supply of old household furniture, which the witness did not consider worth over $25 (the amount allowed to be held exempt from taxation). The defendants went to trial of the motion on affidavits, without the right to plead poverty as the reason for failing to introduce their witnesses and subject them to cross-examination. Under section 878, Rev. Stats. (U. S. Comp. St. 1901, p. 668), the defendants, if without means, could have had these affiants summoned to court at the expense of the government.

[3] The result of putting one of the affiants on the witness stand was so disastrous, and threw such strong suspicion on the remaining affidavits, that we are led to the conclusion that the trial judge properly decided on the evidence before him that Blackburn had no property in 1896 subject to taxation. And it is to be borne in mind that on review of a ruling of such character the appellate court cannot reverse, except that it find that the trial court was plainly wrong. Reynolds v. U. S., 98 U. S. 145, 156, 25 L. Ed. 244. In so far as Blackburn's alleged disqualification is concerned, the case at bar falls under the ruling in State

v. Perry, supra, and we must hold that the motion to quash made in 1908 was properly overruled.

The motion to quash made in 1909 next demands consideration. The grounds of this motion were: (1) That the court had not made an order directing the issue of venire facias; (2) that the indictment was returned by the foreman of the grand jury alone; (3) that no record entry was made of the return of the indictment.

[4] Of the first ground of objection it is to be said that, while there was no order of court directing in express terms that writ of venire facias issue, an order was made and entered of record at the April, 1897, term requiring the clerk and jury commissioner to draw the jurors for service at the October, 1897, term. Section 810, Rev. Stats. (U. S. Comp. St. 1901, p. 627), reads:

"No grand jury shall be summoned * * * unless * * * the judge * * * orders a venire to issue therefor."

But, without reference to any question of waiver, we are of opinion that in enacting this statute Congress had no intent to legislate as to the validity of indictments. The purpose was merely to prevent the expense of having a grand jury unnecessarily summoned. The order of the April term above mentioned so clearly indicated an intent on the part of the judge to have venire issue that we find no merit in the objection. In U. S. v. Reed, 2 Blatchf. 435, 27 Fed. Cas. 727, 733, Mr. Justice Nelson held that a verbal order from the judge to the clerk to issue venire facias for a grand jury was sufficient. In Fries Case, Whart. St. Tr. 458, 3 Dall. 515, 9 Fed. Cas. 826, 923, Mr. Justice Iredell observed that a venire issued with the sanction of the court has the same effect as though the express order of the court had been annexed.

The second ground of objection raised certain questions which this court certified to the Supreme Court of the United States. The answer of that court has disposed of this ground of objection adversely to the plaintiffs in error. See Breese et al. v. U. S., 226 U. S. 1, 33 Sup. Ct. 1, 57 L. Ed. ——.

[5] The third ground, also, seems to us entirely without merit. It is not true that the clerk made no entry of the return of the indictment. He did make an entry reading as follows:

"United States v. W. E. Breese, W. H. Penland, and J. E. Dickerson.

"Indct.: Conspiracy and Embezzlement, Octo. Term, 1897. 'A true bill. J. M. Allen, Foreman.' 'In the above-entitled cause it is ordered by the court, upon motion of the district attorney, that the said cause, together with all the papers therein, be transferred to Asheville, to be there tried at the next term of said court to be held on the 1st Monday in November next.

"It is further ordered that a capias issue forthwith from this court, returnable to the next term of the said Asheville court, and that a justified bond in the sum of thirty thousand dollars, to be approved by the clerk of the federal court at Asheville, be required of each of the defendants above named."

While this entry is incomplete and informal, the defect here is properly to be classed as a defect of form. See section 1025, Rev. Stats. (U. S. Comp. St. 1901, p. 720).

[6] The next assignment we shall consider relates to the admission

of certain evidence. In March, 1894, in anticipation of obtaining a loan of $25,000 from an insurance company, the trustees of the First Baptist Church of Asheville executed five promissory notes, each for $5,000, payable respectively in one, two, three, four, and five years, to the order of J. E. Dickerson and G. W. Purefoy, which were secured by a mortgage or deed of trust covering the church property, executed by the church trustees to one Murphy, trustee. For some reason the proposed arrangement failed, and a loan of $15,000 from a building and loan association was subsequently obtained by the church. On December 21, 1894, in the handwriting of the defendant Dickerson, there was entered on the margin of the record of the deed of trust to Murphy a recital that the notes had been fully satisfied and the deed of trust was released of record over the signature of Murphy, trustee. Dickerson was the treasurer of the church, and two of the $5,000 notes, purporting to be secured by mortgage, were not canceled, and were by him put into the possession of the First National Bank of Asheville. These same notes were subsequently attached as collateral to a note for $10,000 executed by the First National Bank to, and discounted with, the South Carolina Savings Bank. The defendants objected to the admission of this evidence, and subsequently moved that it be stricken out. They did not at any time ask for an instruction limiting the effect to be given to the evidence. The only ground assigned for the objection is that the evidence related to an offense other than that charged in the indictment. In part the evidence objected to related directly to, and tended strongly to support, the charge made in the indictment. At the most, therefore, the defendants could only have been entitled to an instruction limiting the effect of the evidence, for which they did not ask.

[7] But, even in so far as the evidence tended to show the commission of an offense not charged in the indictment, it seems to fall under the doctrine that in cases of fraud evidence of offenses not charged may be admitted, if tending to show fraudulent intent. Wood v. U. S., 16 Pet. 342, 360, 10 L. Ed. 987; Castle v. Bullard, 23 How. 172, 187, 16 L. Ed. 424; Butler v. Watkins, 13 Wall. 456, 464, 20 L. Ed. 629; Moore v. U. S., 150 U. S. 57, 61, 14 Sup. Ct. 26, 37 L. Ed. 996; Allis v. U. S., 155 U. S. 117, 119, 15 Sup. Ct. 36, 39 L. Ed. 91; Bacon v. U. S., 97 Fed. 35, 42, 38 C. C. A. 37; Dorsey v. U. S., 101 Fed. 746, 756, 41 C. C. A. 652.

[8] The next assignment to be discussed relates to a claim of limitation. It is contended on behalf of the defendants that the evidence showed that the offense charged in the indictment was committed more than three years before the finding of the indictment (October 5, 1897), and that the prosecution was therefore barred by the three year statute of limitations. R. S. § 1044, 2 Fed. Stats. Ann. 358 (U. S. Comp. St. 1901, p. 725). The argument is that the conspiracy, if any, was formed more than three years prior to the indictment, and that acts in pursuance of and to effect the object of the conspiracy (R. S. § 5440, 2 Fed. Stats. Ann. 247 [1]) were committed more than three years prior to the indictment. But it was also in evidence that acts to effect the object of and in pursuance of the conspiracy were committed

[1] U. S. Comp. St. 1901, p. 3676.

within less than three years from the finding of the indictment. It must, we think, be admitted that where a conspiracy is formed more than three years prior to indictment, but where the first overt act is committed within the three years, the prosecution is not barred; and this simply because the offense has not been committed until the doing of the overt act. To say, in this connection, that the making of the corrupt agreement is the crime, is a perversion of the meaning of the Supreme Court in U. S. v. Britton, 108 U. S. 199, 2 Sup. Ct. 531, 27 L. Ed. 698. See Hyde v. U. S., 225 U. S. 347, 359, 32 Sup. Ct. 793, 56 L. Ed. 1114. Where, however, the conspiracy was formed more· than three years prior to the indictment, and acts in pursuance thereof are done both prior to and within the three years, there has arisen a difference of opinion. U. S. v. Owen (D. C.) 32 Fed. 534, U. S. v. McCord, (D. C.) 72 Fed. 159, Ex parte Black (D. C.) 147 Fed. 832, 841, and U. S. v. Biggs (D. C.) 157 Fed. 264, 273, support the theory that in such case the limitation bars the prosecution. The weight of authority, in our opinion, is to the contrary. See Wilson v. U. S., 190 Fed. 427, 435, 111 C. C. A. 231; Hedderly v. U. S., 193 Fed. 561, 569, 114 C. C. A. 227; Jones v. U. S., 162 Fed. 417, 426, 89 C. C. A. 303; Lonabaugh v. U. S., 179 Fed. 476, 478, 103 C. C. A. 56; U. S. v. Bradford (C. C.) 148 Fed. 413, 419; U. S. v. Brace (D. C.) 149 Fed. 874, 877; Ware v. U. S., 154 Fed. 577, 579, 84 C. C. A. 503, 12 L. R. A. (N. S.) 1053, 12 Ann. Cas. 233; U. S. v. Greene (D. C.) 115 Fed. 347; U. S. v. Greene (D. C.) 146 Fed. 803, 889; Lorenz v. U. S., 24 App. D. C. 337, 387; Com. v. Wishart, 8 Leg. Gaz. (Pa.) 137; People v. Willis, 52 N. Y. Supp. 808; People v. Arnold, 46 Mich. 268, 9 N. W. 406; Amer. Ins. Co. v. State, 75 Miss. 24, 35, 22 South. 99, 102; Ochs v. People, 25 Ill. App. 379, 414; 6 Am. & Eng. Ency. (2d Ed.) 844; 1 Bishop's New Cr. Proc. § 61; 2 Bishop's New Cr. Proc. § 206; 29 Am. & Eng. Ency. (2d Ed.) ·165. That a conspiracy may be a continuing offense, and that prosecution for a conspiracy formed more than three years prior to the indictment is not barred, if it be alleged and proved that the conspiracy continued in force and operation within the period of limitation, is settled by U. S. v. Kissel, 218 U. S. 601, 31 Sup. Ct. 124, 54 L. Ed. 1168, reversing U. S. v. Kissel (C. C.) 173 Fed. 823.

The doing of an act by one conspirator, with the knowledge and consent of the others, in pursuance of an agreement made long previously, and to carry out the purpose of such agreement, necessarily implies at least a tacit renewal of the conspiracy. A conspiracy such as is charged here continues until its purpose has been fully effected or until it has been abandoned. The offense consists, not in the mere agreement, but in the existence of the conspiracy, and the doing of an act to effect the object of the conspiracy. The making of the unlawful agreement and the doing of the overt act more than three years prior to indictment undoubtedly completes *an offense,* but not necessarily the offense charged in the indictment. The offense charged is a conspiracy, formed by tacitly or expressly agreeing to continue in force a conspiracy originally entered into more than three years prior to the indictment, and the commission of overt acts within the three

years. The indictment in the case at bar charged that the conspiracy was formed July 1, 1897, and that the overt act was committed on that date. As time is not of the essence of such a charge, it was permissible to allege one time and prove another. Evidence of a conspiracy formed more than three years prior to the indictment, and of acts done within three years by the different defendants, with the knowledge and consent of the others, in pursuance of and to carry out the purpose of the original conspiracy, clearly support such an indictment, notwithstanding evidence of similar overt acts committed more than three years prior to the finding of the indictment. See Hyde v. U. S., 225 U. S. 347, 369, 32 Sup. Ct. 793, 56 L. Ed. 1114; Heike v. U. S., 227 U. S. 131, 33 Sup. Ct. 226, 57 L. Ed. ——. The instructions asked by the defendant on this point are all based on an erroneous theory, and it was not error to refuse to give them. The charge given by the learned trial judge in respect to this feature of the case is not open to any exception taken to it.

[9] Another ground of objection is based on a theory stated in the charge. To abbreviate as far as possible, we quote merely enough of the charge to illustrate the point:

"If Breese and Dickerson conspired with each other, whether Penland was or was not a party to the conspiracy, if acts were done in furtherance of the conspiracy, and to effect the object of the conspiracy, then you would convict both Breese and Dickerson on this trial."

The indictment charged that Breese, Penland, and Dickerson conspired, and only Breese and Dickerson were on trial. In 4 Elliott on Evidence, § 2935, it is said:

"Where more than two persons are charged as conspirators, it has been held sufficient if the proof show that two of them were guilty, and that the charge as to others was surplusage. It was held not essential that the proof show that all were guilty."

See, also, Woodworth v. State, 20 Tex. App. 375; 13 Ency. Ev. 719; Looney v. People, 81 Ill. App. 370; Olson v. U. S., 133 Fed. 849, 855, 67 C. C. A. 21; U. S. v. Sacia (D. C.) 2 Fed. 754, 758, 759; Browne v. U. S., 145 Fed. 1, 13, 76 C. C. A. 31; U. S. v. Richards (D. C.) 149 Fed. 445, 453, 457; State v. Wadsworth, 30 Conn. 55, 57; Livermore v. Herschell, 20 Mass. (3 Pick.) 33.

Much the greater number of exceptions taken by the defendants do not justify detailed mention. The majority of the remaining assignments are based on the refusal of the court to give special instructions asked for by the defendants. We have examined each of them carefully. Many of the instructions asked for are clearly improper. Some are not open to objection, but every sound instruction asked for was in effect given the jury in the judge's charge.

On review of the entire case, we find no reversible error, and the judgment below must be affirmed.