## ELDREDGE v. UNITED STATES.

### No. 679.

Circuit Court of Appeals, Tenth Circuit.

Dec. 28, 1932.

**450**

Edward R. Callister, of Salt Lake City, Utah, for appellant.

E. C. Jensen, Asst. U. S. Atty., of Salt Lake City, Utah (C. R. Hollingsworth, U. S. Atty., and George H. Lunt, Asst. U. S. Atty., both of Salt Lake City, Utah, on the brief), for the United States.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

Eldredge and three fellow-employees of the Utah State National Bank commenced embezzling the funds of the bank in 1919, concealing the embezzlements by falsification of the books. He left the bank in 1921, but the embezzlements continued, Eldredge participating therein and assisting in the concealment by opening a spurious account in another bank. In 1924 he became a book-keeper for the Western Loan and Building Company, and aided in concealing the continuing abstractions by approving false reconcilement statements for that company. His last affirmative act, in aid of the conspiracy, was the making of a false reconcilement statement on August 15, 1927, by which the then shortage of $69,000 was effectively concealed. In March, 1928, Eldredge told his associates that he was about to be promoted. He testified as to a conversation with one of his fellow-conspirators:

"I told him I would be unable further to help him shield or conceal the shortage at the Utah State National Bank as I was due for a promotion with the Western Loan and Building Company; further, that I was absolutely through and would have nothing further to do with the shortage at the Utah State National Bank. I had helped Mr. Johnson cover up the shortage up to August 15, 1927, and I knew there was a shortage at the Utah State National Bank in about $69,000.00 and was alarmed at the amount of it."

The embezzlements continued until October, 1931, when the inevitable dénouement revealed a shortage of $108,200. The indictment, filed November 7, 1931, charged Eldredge and his associates with conspiring to embezzle moneys of the bank, and with conspiring to make false entries to conceal the embezzlements. Nineteen overt acts of embezzlements and of false entries are alleged.

The defense is that the prosecution is barred by the statute of limitations (18 USCA § 582). The indictment was filed more than three years after Eldredge's last affirmative act in aid of the conspiracy, and more than three years after the conversation quoted above, which Eldredge claims effected his withdrawal from the conspiracy. The trial court denied a motion for an instructed verdict; he submitted to the jury the question of whether Eldredge had withdrawn from the conspiracy as far as participation in further embezzlements was concerned, but declined to submit the question of withdrawal from the conspiracy to falsify the books in order to conceal embezzlements then accomplished. Error is assigned on such rulings. The only evidence of withdrawal is that above quoted. The question presented, then, is whether that is evidence from which a jury might find that Eldredge had effectively withdrawn from the conspiracy to falsify the records prior to the statutory period.

The legal haze arising from the original concept that a conspiracy begins and ends with the unlawful agreement, and that the requirement of an overt act is to afford the conspirator a locus pœnitentiæ, was dispelled in United States v. Kissel, 218 U. S. 601, 31 S. Ct. 124, 54 L. Ed. 1168, and in Hyde v. United States, 225 U. S. 347, 32 S. Ct. 793, 803, 56 L. Ed. 1114, Ann. Cas. 1914A, 614. The overt act is an essential ingredient of the crime; a conspiracy which contemplates a series of overt acts is a continuing conspiracy, and the statute does not commence to run until the last overt act, performed in compliance with the original agreement, has been accomplished. Brown v. Elliott, 225 U. S. 392, 32 S. Ct. 812, 56 L. Ed. 1136; Ware v. United States (C. C. A. 8) 154 F. 577, 12 L. R. A. (N. S.) 1053, 12 Ann. Cas. 233; Breese v. United States (C. C. A. 4) 203 F. 824; Miller v. United States (C. C. A. 4) 277 F. 721, 725. In the case at bar, overt acts, in furtherance of the conspiracy charged, were

proven to have been committed within a few months of the indictment. That such overt acts were those of members of the conspiracy other than Eldredge is of no moment, if he had not theretofore withdrawn from the conspiracy.

If a member effectively withdraws from a conspiracy, he is not liable for acts of his former associates after his withdrawal; and the statute of limitations commences to run, as to him, upon his withdrawal. But withdrawal must be accomplished by some affirmative and effective act. Boyle v. United States (C. C. A. 7) 259 F. 803. In Hyde v. United States, supra, the Supreme Court said:

"Nor does it take from a conspirator the power to withdraw from the execution of the offense or to avert a continuing criminality. It requires affirmative action, but certainly that is no hardship. Having joined in an unlawful scheme, having constituted agents for its performance, scheme and agency to be continuous until full fruition be secured, until he does some act to disavow or defeat the purpose he is in no situation to claim the delay of the law. As the offense has not been terminated or accomplished, he is still offending. And we think, consciously offending,—offending as certainly, as we have said, as at the first moment of his confederation, and continuously through every moment of its existence."

What sort of an affirmative act is necessary to accomplish withdrawal depends upon the nature of the crime contemplated. If the object of the conspiracy is the doing of a single act, withdrawal may be effected by a notification to his associates, seasonably in advance of the time set, that a member will not carry on. In the case at bar, a part of the conspiracy was the embezzlement of funds; a notification to his associates that he would no longer participate in their plans to abstract further funds from the bank, is an affirmative and effective withdrawal from that part of the conspiracy.

But an essential part of the conspiracy planned was to conceal the shortage by a falsification of the books. If the embezzlement had stopped with the first sum abstracted in 1919, it would have been necessary to have falsified the books each succeeding month of each succeeding year until the money was repaid. This was what was planned, and this was what was successfully accomplished for 12 years. As was said by the Circuit Court of Appeals of the Fourth Circuit concerning the identical offense here

charged, "A conspiracy such as is charged here continues until its purpose has been fully effected or until it has been abandoned." Breese v. United States, 203 F. 824, 830.

Conceding that the conversation of March, 1928, was notice to his associates that he would no longer participate in or consent to the embezzlement of further sums from the bank, can it fairly be interpreted as a request to his associates that they cease their efforts to conceal the shortage? Could the jury find, from this conversation, that Eldredge would no longer assent to the further concealment of sums theretofore embezzled, and in which he had shared? For, as Judge Walter H. Sanborn aptly said, the test is one of assent. Ware v. United States (C. C. A. 8) 154 F. 577, 580, 12 L. R. A. (N. S.) 1053, 12 Ann. Cas. 233. We cannot so construe this conversation. Eldredge knew that the defalcations would be immediately discovered, and the object of the conspiracy defeated, if his associates ceased to falsify the books. Failure to falsify a single statement would result in immediate disclosure of the crime; if Eldredge intended to confess his participation in the embezzlements of the past, some more conventional and effective method would have been employed. Eldredge, in this conversation, did not instruct his associates no longer to conceal their crime. Rather, he advised them that he was not in position longer to assist in the concealment, and that he would participate in no further abstractions. What he said, at the outset, was that he would be unable further to "help him shield or conceal the shortage." The conversation cannot be twisted into a withdrawal of the authority, theretofore expressly conferred, to continue to conceal the existing shortage.

We are not persuaded that Eldredge intended to withdraw his assent to continued concealment by his associates. But even if he did, it is not enough. A withdrawal from a conspiracy cannot be effected by intent alone; it must be accompanied by some affirmative action which is effective. A declared intent to withdraw from a conspiracy to dynamite a building is not enough, if the fuse has been set; he must step on the fuse. The first abstraction from this bank set in motion a chain of inescapable consequences, if the conspiracy was to succeed. To withdraw, that chain must be interrupted; and that is not done by advising his associates to confess. Eldredge must have known that his associates must continue to conceal the shortage unless they, too, were willing to confess and take the consequences. If he had ad-

monished them no longer to falsify the records, which he did not, such admonition would have amounted to no more than a suggestion that all confess their crime; if his associates were not in the mood so to do, such a declaration to them could have been no more than an ineffective gesture.

We hold, therefore, that Eldredge did not manifest an intent, in the conversation with his confederate, that the shortage should be revealed and their crime confessed; but if he did so intend, a manifestation of that laudable purpose to his co-conspirator was not an effective method of disclosure or an adequate confession of guilt.

The judgment is, therefore, affirmed.

COTTERAL, Circuit Judge, dissents.