UNITED STATES *v.* OWEN and others.

*(District Court, D. Oregon.   November 7, 1887.*

1. CONSPIRACY—TO DEFRAUD GOVERNMENT—PUBLIC LANDS.
    Section 5440, Rev. St., is not limited in its operation to conspiracies to defraud the United States of its "revenue," but applies to all conspiracies to deprive the United States of any property or dues by means of misrepresentation or concealment of material facts.
2. LIMITATION OF ACTIONS—PROSECUTION FOR CONSPIRACY.
    The crime defined in section 5440, Rev. St., is composed of the conspiracy, and an act done in pursuance thereof; and as soon as the one is formed, and the other committed, the crime is consummated, and the statute of limitations begins to run against a prosecution therefor; and in three years thereafter the bar is complete.

*(Syllabus by the Court.)*

Indictment for Conspiracy with Intent to Defraud the United States.
*Lewis L. McArthur,* for the United States.
*M. H. Y. Thompson* and *Rufus Mallory,* for the defendants.

DEADY, J.   The defendants are accused by the grand jury of this district of the crime of conspiring together to defraud the United States out of sundry portions of the public lands in the district of Oregon contrary to section 5440, Rev. St.

The indictment was found on April 12, 1887, and it is alleged therein that prior to July 1, 1881, the defendant Owen had from time to time filed with the proper state board applications for the purchase of swamp and overflowed lands therein described, as soon as the same or any portion thereof should be certified to the state of Oregon under the acts of congress and the regulations of the department of the interior on the subject; that between August 1, 1880, and January 15, 1882, the defendant Ankenny was a special agent of the general land-office, charged with the duty of inspecting, in the field, the swamp and overflowed lands claimed by the state of Oregon under said acts and regulations, and of reporting the result, under oath, to the commissioner of the general land-office; that on July 1, 1881, said Owen, Ankenny, and the defendant Barnhart did agree and conspire together to defraud the United States government of sundry parcels of public lands in Oregon, amounting to 86,665 acres, and to that end said Ankenny, as said special agent, was to report as swamp and overflowed lands, to which the state of Oregon was entitled, large tracts of the public land, including the lands last aforesaid, which were and are not swamp and overflowed, and endeavor to procure the issue of patents therefor to said state; and said Owen was to procure certificates of purchase from the state for said lands; and said Barnhart was to assist said Owen, by preparing applications for the purchase of said lands from the state, and by producing false preliminary proofs as to the character of said lands, and thereby secure their withdrawal from entry; and that said defendants, and each of them, would use any means available for such purpose, and endeavor to negotiate the

sale of said lands; that afterwards, on December 26, 1881, said Ankeny, in pursuance of said unlawful agreement and conspiracy, did make oath to a series of 18 affidavits, wherein he stated that all the lands described therein, to-wit, 97,560 acres, were swamp and overflowed, within the meaning of the act of congress of March 12, 1860, on that subject, and on which the secretary of the interior on April 16, 1882, certified the same to the state of Oregon as swamp and overflowed lands, the list thereof being entitled, "List number five of the Lakeview series of swamp lands," 33,000 acres of which lands were not swamp or overflowed lands, within the meaning of said act, and did not accrue to the state thereunder,—all of which was well known to said Ankeny when he made said affidavits.

It is also alleged in the indictment that, later on, other acts were done by the defendants, or some of them, in pursuance of the conspiracy, namely: (1) On December 23, 1881, Owen, with the knowledge of Barnhart, made an agreement with Ankeny and James H. Fisk to sell a large portion of the lands which Ankeny was then about to report, and did on December 26th report, by means of the affidavits aforesaid, as swamp and overflowed. (2) The defendants, between the date of said conspiracy and the finding of the indictment, endeavored, at divers times, to secure the issue of patents for said lands from the United States to the state. (3) On August 24, 1881, September 6, October 9 and 16, November 5, 1883, and December 22, 1884, Owen caused to be filed with said board six specific descriptions of land, containing in the aggregate 621,527 acres, and six applications to purchase the same from the state as swamp or overflowed, well knowing that a large portion thereof was not swamp or overflowed, but public lands of the United States; and on October 9 and November 14, 1883, and March 10, 1885, received certificates of purchase for said lands from the state. (4) On October 31, 1883, Barnhart procured himself to be appointed notary public for Oregon. (5) On September 25, 1884, Barnhart forged three writings purporting to be the joint affidavits of D. M. McMenamy and I. L. Poujade; and, on October 8 of the same year, one other writing, and on October 9th two other writings, purporting to be the joint affidavits of C. C. Loftus and D. R. Jones,—all of which appear to have been subscribed and sworn to before him as notary, and are to the effect that the lands described in the lists annexed thereto, amounting to 155,600 acres, are swamp or overflowed, the larger portion of which were on March 12, 1860, and ever since have been, dry lands of the United States, and not unfit for cultivation by reason of being swamp or overflowed; which writings were, before December 11, 1884, by Owen, delivered to the governor of the state as proof of the facts therein stated, and by the latter transmitted to the surveyor general of the United States for Oregon, for a like purpose, as said Barnhart and Owen intended and expected he would.

The defendant Ankeny resides out of the state, and has not been arrested. The defendants Owen and Barnhart demur to the indictment, for that it was not found within the time prescribed by law, and that

the facts stated therein do not constitute a crime according to the laws of the United States.

Section 5440, Rev. St., on which this indictment is founded, reads as follows:

"If two or more persons conspire, either to commit any offense against the United States, or to defraud the United States in any manner, or for any purpose, and one or more of such parties do any act to effect the object of the cont spiracy, all the parties to such conspiracy shall be liable to a penalty of no less than $1,000, and not more than $10,000, and to imprisonment not more than two years."

The crime defined by this act is *sui generis*. It consists of two elements: A conspiracy, and an act done to effect or accomplish it. The purpose of the conspiracy must be either to commit a crime defined by any law of the United States, or to defraud the same. To defraud "the United States in any manner or for any purpose" is a very comprehensive expression, and includes every conspiracy to deprive the United States, by the misrepresentation or concealment of material facts, of any kind of property, or whatever may be legally due it on account of taxes, duties, imports, excises, or the like.

For the demurrer it is argued that section 5440 applies only to a conspiracy to defraud the revenue of the United States. The reason given is that the section being taken from section 30 of the act of March 2, 1867, (14 St. 471,) entitled, "An act to amend existing laws relating to internal revenue, and for other purposes," the words "to defraud" must be limited to the subject-matter of the act,—the internal revenue.

The subject of the act is not limited by its title to revenue of any kind, but expressly includes "other purposes" or subjects. The language of the section gives no evidence that it was the intention of congress to limit its operation to frauds upon revenue. Taken in its natural sense, the language includes a conspiracy to commit "any" crime against the United States, or to defraud it in any manner; and there is nothing in the circumstances of the case which ought to prevent it from having effect accordingly. As found in the Revised Statutes, there are some verbal changes in the section which only emphasize the general purpose and character of the statute. It is a wholesome and much-needed act; and it is difficult to assign any reason compatible with the public good, or the protection of the public property or dues, why any conspiracy to commit a fraud thereon or thereabout should be excluded from its operation. The limitation on the prosecution of the crime described in this indictment is found in section 1044, Rev. St., which provides that the indictment must be found within three years next after the same "shall have been committed;" while section 1045 thereof declares that the limitation shall not extend to the case of "any person fleeing from justice."

In *U. S.* v. *Cook,* 17 Wall. 168, the supreme court decided that the defense of the bar of this statute of limitations cannot be made by a demurrer to the indictment, although it should appear on the face thereof that the period within which the action should have been commenced had passed before the finding of the indictment; for it may turn out on

the trial that the defendant is within the proviso concerning a fugitive from justice. This decision is founded on a well-known rule of pleading where the statute defining a crime contains an exception or proviso. It would be much more convenient, however, if the prosecution was required to allege in the indictment that the defendant was a fugitive from justice, in cases where that fact is relied on to take the case out of the statute. *People* v. *Miller*, 12 Cal. 291; *People* v. *Montejo*, 18 Cal. 38. In this case, it being well understood that the defendants joining in the demurrer were never fugitives from justice, the district attorney, at the suggestion of the court, and to avoid the trouble and expense of a useless trial with a jury, in case the court should be of the opinion that the action was barred by lapse of time, has filed a paper in which he admits, for the purpose of this demurrer, that the defendants joining therein were not fugitives from justice. Assuming this to be a fact of record, I proceed to dispose of the question: is this action barred by lapse of time?

The general rule is that the statute begins to run from the commission or consummation of the crime. Whart. Crim. Pl. § 321. When was this crime committed? The conspiracy was formed on July 1, 1881, and the first act done by any of the conspirators in pursuance thereof was the making of the alleged false affidavits by Ankenny on December 26, 1881, in relation to the character of the land mentioned therein. The crime was then consummated. The two elements of which it is composed—the conspiracy and the act—were accomplished, and the crime committed. On December 27, 1881, more than five years prior to the institution of this prosecution, an indictment might have been found against the defendants for this crime. This being so, the limitation on the right to institute a prosecution therefor began to run at the same time, and became a bar thereto on that day, in 1884.

In support of the prosecution it is contended that the crime was not completed until the commission of the last acts done in pursuance of the conspiracy; and that as the filing of the false description by Owen on December 22, 1884, and the making and using the alleged forged affidavits by Barnhart in September and October of the same year, each took place within the three years immediately preceding the finding of the indictment, the prosecution is not barred. In this respect it is likened to or said to be a continuous crime. No authority is cited for the proposition, and on general principles I think it cannot be maintained.

An instantaneous crime, such as arson or killing, is consummated when the act is completed. A continuous crime, such as carrying concealed weapons, endures after the period of consummation. In the former case the statute of limitations begins to run with the consummation, while in the latter it only begins with the cessation of the criminal conduct or act. But even then it is a bar to a prosecution for any act or part of the continuous crime which occurred three years prior to such time.

As has been said, this crime consists, not in a continuous series of acts, constituting what may be called a habit, but of two distinct things only:

a conspiracy, and an act done in pursuance thereof, at any time thereafter. But admitting this is a continuous crime, the demurrer must be sustained on this point. That being the case, the prosecution of the defendants for any act committed three years before the finding of the indictment is barred by lapse of time, and those alleged to have been committed within three years of such finding are not sufficient to constitute the crime defined by the statute. The very foundation of the crime—the conspiracy—is shut out, and without this circumstance the offense in question is not charged in the indictment. However, this is an instantaneous crime, composed of the conspiracy, and the first act done to affect the object thereof, at whatever distance of time therefrom. When the conspiracy is formed the crime is begun, and when the act is committed it is consummated. An indictment will then lie against the criminal, and the limitation on the right of the government to prosecute him begins to run, and in three years the bar is complete.

This conclusion does not deny the liability of any of these defendants for any act committed by him within three years, in furtherance of said conspiracy, when the same amounts to a crime. Indeed, Barnhart now stands accused in this court in three indictments, found under section 5418, Rev. St., on account of the affidavits alleged herein to have been forged by him in furtherance of this conspiracy.

The demurrer must be sustained; and it is so ordered.