GEORGIA M. SPANGLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

J. W. SPANGLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 56320, 56321.   Promulgated October 31, 1933.

*J. W. Fisher, Esq.,* for the petitioners.
*H. F. Noneman, Esq.,* for the respondent.

266

## OPINION.

BLACK: In the stipulation it was agreed that either party thereto might object to the relevancy or materiality of any of the facts stipulated. At the hearing, petitioners objected to the minutes of the board of directors' meeting. of December 7, 1927 (Exhibit A of the stipulation) and to the notice of the annual meeting of the stockholders, dated December 9, 1927 (Exhibit B of the stipulation) and to the stockholders' consent agreement dated December ––, 1927 (Exhibit C of the stipulation). Petitioners' objection to the foregoing evidence was to the effect that the plan of declaring a 30 percent dividend to the stockholders of the bank and using the money to subscribe for the stock of the National Co. on behalf of the stockholders was abandoned for other plans and hence the evidence contained in these exhibits was irrelevant and immaterial. It was agreed that the Board would withhold its ruling until the time of its decision.

Whether or not a taxable dividend has been declared or whether a reorganization has taken place under such circumstances as to make the distribution to the stockholders a nontaxable one, is often a difficult and complex matter.

We think it is important to the Board in all such cases to have all the evidence before it which will throw light on the transactions.

In our judgment the evidence contained in Exhibits A, B and C of the stipulation should be admitted. Hence petitioners' objections are overruled and their exception is noted, as requested.

Exhibit K attached to the stipulation was a circular letter dated March 3, 1930, addressed to the former stockholders of the bank, relating to the tax controversy resulting from the Commissioner's determination that the stockholders had received a dividend in 1928 of $30 a share on their bank stock. Petitioners' objection to this letter was that it was not written until two years after the transactions occurred; it did not contain any admissions against interest of these petitioners or anyone in privity with them; and was irrelevant and immaterial.

We think these objections should be sustained. The letter does not purport to give any recital of the details of the transactions in question. It simply purports to give a brief account of the tax controversy which has arisen between the stockholders and the Commissioner and states the purpose to test the controversy before the Board and in the courts. We do not see where this letter will throw any light on the matters which we have before us for decision. Hence it is excluded from the evidence and respondent's exception is noted, as requested.

We come now to decide the main issue in the case, which is whether the bank declared and paid a 30 percent cash dividend to its stockholders, as respondent contends, or whether the bank transferred $300,000 of its assets to the National Co. in payment of all of its capital stock and immediately distributed this stock in pursuance of a plan of reorganization which made the transaction nontaxable to the stockholders under the applicable provisions of the Revenue Act of 1928.

It seems clear from a reading of the minutes of the bank's board of directors at a meeting held December 7, 1927, and the notice to stockholders dated December 9, 1927, of the annual meeting, and the consent agreement of the stockholders bearing date December —, 1927, all given in detail in our findings of fact, that it was the original intention of the bank's directors to declare and pay a 30 percent dividend to the bank's stockholders and then that they would use the money to subscribe and pay for the stock in the National Co. If this had been done we would have had much the same situation which we had before us in *John G. Lonsdale*, 11 B.T.A. 659; affd., 32 Fed. 537, certiorari denied, 280 U.S. 575; *Mrs. Frank Andrews*, 26 B.T.A. 642; *Walter Hopkins*, 27 B.T.A. 1331.

In the *Lonsdale* and *Andrews* cases the board of directors of the respective banks declared cash dividends in favor of their stockholders, payable to trustees which had been selected by them to receive the money and use it in subscribing and paying for the stock in the newly created securities corporation. In the *Hopkins* case the dividend declared to the stockholders, instead of being cash, was of the remaining assets of the Citizens National Bank

after all its quick assets had been conveyed to the new bank which resulted from its merger with the First National Bank of Baltimore. We held that the dividend declared to the stockholders of the Citizens National Bank of its surplus assets was no different from a dividend in cash and that the same rule applied in such a case as we had announced in the *Lonsdale* case and followed in the *Andrews* case. In all these cases we held that the dividends were taxable to the stockholders, notwithstanding they were *paid* to the trustees and used by them in paying for the stock of the subsidiary corporations.

But petitioners contend that the facts in the instant case are distinguishable from those which we had before us in the above cited cases. Petitioners say that in the instant case there was no declaration of a cash dividend or of a dividend of property by the directors; that under the stockholders' resolution adopted at the annual stockholders' meeting on January 10, 1928, approving the directors' plan of reorganization, the bank was authorized to transfer $300,000 to the National Co. solely for the purpose of acquiring ownership of all the stock of that company, with the understanding that it would distribute a beneficial interest in such stock to its stockholders; that in view of the terms of the resolution, the $300,000 remained the property of the bank and never did become the property of the stockholders; that the stockholders in the instant case, unlike the stockholders in the *Lonsdale* and *Andrews* and *Hopkins* cases, never did receive a cash dividend or a dividend of property prior to the organization of the National Co., but received a distribution from the bank of beneficial interests in the stock of the National Co. *after* it was organized.

We believe that the distinction in facts is a valid one. Whether this distinction will cause the distribution which the bank made to its stockholders of beneficial interests in the National Co. to be a nontaxable transaction, we will discuss later. For the moment we will turn our attention to what was actually done in these transactions. Our findings of fact show that at the directors' meeting on December 29, 1927, it was resolved to submit to the annual meeting of the stockholders of the bank " a proposition of reorganization of the Seattle National Bank by having the bank hold all of its assets excepting $300,000 * * * and to turn these $300,000 of assets into an investment company to be called the Seattle National Company with common stock of 20,000 shares and that this $300,000 of assets belonging to the bank should be turned over to the investment company as payment in full for the 20,000 shares of no par value of the common stock of such investment company." It was exactly this plan which the stockholders approved at their annual meeting held January 10, 1928. It was this plan which was carried out in the organization of the National Co. and the distribution of beneficial

interests in its stock ratably to the stockholders of the bank. It is true that this plan was not the plan as first proposed in the directors' meeting of December 7, 1927, and in the notice to stockholders of the annual meeting, dated December 9, 1927, and consented to by the stockholders December —, 1927.

But we must determine tax matters upon what was done rather than upon what the parties may have at one time intended to do. Cf. *George M. Brady*, 22 B.T.A. 596. In the *Brady* case the original offer and acceptance was for the stockholders of the Bank of Hampden to sell their stock to the Baltimore Trust Co. The Commissioner contended that although the transaction started out to be a sale of stock, it was subsequently changed to a sale of assets by the Bank of Hampden to the Baltimore Trust Co. and a subsequent distribution in liquidation to the stockholders of the Bank of Hampden in cancellation of their stock and that, by reason of the fact that the transactions were actually carried out in this manner, the Bank of Hampden was liable for a tax on the profits arising from the sale of its assets and the stockholders were liable as transferees because of the fact that they received in liquidation of their stock the entire amount of cash received by the Bank of Hampden from the sale of its assets.

We sustained the Commissioner in these contentions because the evidence supported his version of the transactions. The same logic which caused us to base our decision in the *Brady* case not upon what the parties started out to do, but upon what they actually did, should cause us in the instant case to base our decision on not what the parties started out to do, but upon what they actually did.

Was there a tax liability arising from what was actually done in the instant case? A dividend payable in stock of the Seattle National Co. to the stockholders of the Seattle National Bank would of itself ordinarily be taxable, since a dividend of one corporation payable in stock of another corporation is taxable in the same manner as a cash dividend. *United States* v. *Phellis*, 257 U.S. 156; *Rockefeller* v. *United States*, 257 U.S. 176. The question we have to decide is whether, because of certain provisions of the Revenue Act of 1928, the admitted gain resulting to the stockholders of the bank because of the distribution to them of beneficial interests in the stock in the National Co. should not be recognized for tax purposes.

Section 112 (g) of the Revenue Act of 1928, reads:

(g) *Distribution of stock on reorganization.*—If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to a reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock of securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

This provision is the same as section 203 (c), Revenue Acts of 1924 and 1926. In reporting the Revenue Bill of 1924, the House Committee on Ways and Means made the following statements with reference to the foregoing language:

&ast; &ast; &ast; There is no provision of the existing law which corresponds to subdivision (c). Under the existing law, if corporation A organizes a subsidiary, corporation B, to which it transfers part of its assets in exchange for all the stock of corporation B, and distributes the stock of corporation B as a dividend to its stockholders without the surrender by the stockholders of any of their stock, then such a dividend is a taxable one. If, however, corporation A organizes two new corporations, corporations B and C, and transfers part of its assets to corporation B and part to corporation C, and the stockholders of corporation A surrender their stock and receive in exchange therefor stock of corporations B and C, no gain from the transaction is recognized. Thus, under the existing law, the same result, except as to tax liability, may be obtained by either of two methods; but if the first method set out above is adopted, the gain is taxable, while if the second method set out above is adopted, there is no taxable gain. Subdivision (c) of the bill permits the reorganization to be accomplished in the first manner set out above without the recognition of gain. This method represents a common type of reorganization and clearly should be included within the reorganization provisions of the statute as long as the exemption under the present law is continued.

In order for a distribution to fall within section 112 (g) of the Revenue Act of 1928, the following requirements must be met: (1) The distribution must be in pursuance of a plan of reorganization; (2) the distribution must be made to a shareholder in a corporation a party to the reorganization; (3) the distribution must be of stock or securities in the corporation making the distribution or in another corporation a party to the reorganization; (4) the distributee does not surrender stock or securities already held. We think that the facts show that all the foregoing conditions are met in the instant case if the paying into the treasury of the National Co. of $300,000 in cash out of the assets of the bank and the issuance to the bank or its trustees of all the common stock of the National Co. and the immediate distribution of the beneficial interests in that stock to the stockholders of the bank, was a reorganization within the meaning of section 112 (i) of the Revenue Act of 1928. Section 112 (i) reads:

(1) The term " reorganization " means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, &ast; &ast; &ast; or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred &ast; &ast; &ast;.

(2) The term " a party to a reorganization " includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

While petitioners argue that the facts show a reorganization under either (A) or (B) of the reorganization provision above quoted, we do not think that the facts of the instant case show a reorganization under (A). While it is true that the bank acquired all the stock of the National Co. and this acquisition would come squarely within the language of the parenthetical clause of (A) if that clause is to be read independently of what comes before it, that clause must not be so read. *Prairie Oil & Gas Co.* v. *Motter*, 66 Fed. (2d) 309; *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U.S. 462; *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; *Minnesota Tea Co.*, 28 B.T.A. 591.

The effect of the foregoing decisions is to hold that the acquisition of stock or the acquisition of property mentioned in the parenthetical clause of (A), to constitute a reorganization, must be in connection with a merger or a consolidation or something which partakes of or resembles a merger or a consolidation. We do not think that the organization of a subsidiary corporation by a parent corporation and the acquiring of all its capital stock and the distribution of that stock to its stockholders would be a merger or a consolidation or akin thereto. We think a merger or a consolidation referred to in (A) means a merger or consolidation of existing corporations. Hence we think if there was a reorganization in the instant case it must fall under (B), and not under (A). We think the facts of the instant case come squarely within the provisions of (B) above.

The bank transferred a part of its assets, to wit, $300,000 in cash, to the National Co. and immediately thereafter the bank or its stockholders, or both, were in control of the National Co. because they owned its entire capital stock.

In *Rudolph Boehringer*, 29 B.T.A. 8, petitioner was a stockholder in the American Zeolite Corporation of New York. For reasons stated in our opinion, the American Zeolite Corporation of New Jersey was organized and on August 23, 1928, the New York corporation sold all of its assets except $50,000 to the New Jersey corporation for all of its stock. The stock thus received from the New Jersey corporation was distributed pro rata to the stockhlders of the New York corporation. Among other things, we said in that opinion: " There was a reorganization, since there was a transfer by New York of a part of its assets to New Jersey and immediately thereafter New York or its stockholders were in control of New Jersey. Section 112 (i) (1) (B). The petitioner received his New Jersey stock tax free. Section 112 (g) exactly covers this case."

On the facts of the instant case we hold that there was a reorganization, and that whatever gain resulted to the stockholders of the bank by reason of their receipt of beneficial interests in the stock of the

National Co. was not taxable because of the provisions of section 112 (g) of the Revenue Act of 1928.

Reviewed by the Board.

*Decision will be entered for petitioners.*

TRAMMELL dissents upon authority of the language used in the court's opinion in *Prairie Oil & Gas Co.* v. *Motter*, 66 Fed. (2d) 309, and also upon authority of *Warner Co.*, 26 B.T.A. 1225.